IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

DELVILLE BENNETT,

                Plaintiff,         Civil Action No.

        v.                  9:09-CV-0515 (GLS/DEP)

TED NESMITH, Physicians Assistant,
LESTER WRIGHT, M.D., Deputy Commissioner
and Chief Medical Officer, and TIMOTHY
WHALEN, M.D., Medical Provider,

                Defendants.

─────────────────────────────

APPEARANCES:

FOR PLAINTIFF:

DELVILLE BENNETT, *Pro Se*
98-A-1110
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

FOR DEFENDANTS:

HON. ANDREW M. CUOMO      MICHAEL G. McCARTIN, ESQ.
Attorney General of             Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Delville Bennett, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights. Plaintiff's complaint names three medical employees of the New York State Department of Correctional Services ("DOCS") as defendants, and alleges that they were deliberately indifferent to his complaints of persistent pain.  As relief, plaintiff seeks recovery of compensatory and punitive damages as well as a permanent injunction directing prison officials to examine him and provide appropriate medical treatment.

While two of the three named defendants have answered plaintiff's complaint the third, Dr. Lester Wright, now moves for dismissal of Bennett's claims against him, asserting that plaintiff's complaint fails to disclose a basis to find his personal involvement in the constitutional deprivations alleged, sufficient to support a finding of liability against him. For the reasons set forth below, I recommend that defendant Wright's motion be granted, with leave to the plaintiff to replead if desired.

2

I.   <u>BACKGROUND</u>[1]

Plaintiff is a prison inmate entrusted to the care and custody of the DOCS.  Complaint (Dkt. No. 1) ¶ 2.  At the times relevant to his claims, plaintiff was designated to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  *Id.*

On June 19, 2007 plaintiff was injured when he fell down stairs at one of the buildings at Great Meadow.  Complaint (Dkt. No. 1) ¶ 7.  Although this is not entirely clear from his complaint, plaintiff apparently sought medical treatment for his injuries from defendant Ted Nesmith, a physicians assistant ("PA"), as well as three nurses all of whom, he maintains, were indifferent to his condition.  *Id.* ¶ 8.  Specifically, plaintiff alleges PA Nesmith advised Bennett that he was "infested with arthritis" and sent him away without addressing his complaints.  *Id.*

---

[1]   In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also, Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  I have also considered the materials submitted by the plaintiff in opposition to defendant's motion, Dkt. No. 23, to the extent they are consistent with the allegations set forth in his complaint.  *See Donhauser v. Goord*, 314 F. Supp.2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

Plaintiff's allegations regarding defendant Wright's role in the offending conduct are sparse.  Defendant Wright is the Deputy Commissioner and Chief Medical Officer of the DOCS.  Complaint (Dkt. No. 1) ¶ 3.  Plaintiff alleges that prior to his accident on June 19, 2007, defendant Wright was advised by letter from plaintiff of the fact that he was experiencing excruciating pain and was asked to intervene on his behalf.[2]  *Id.* ¶ 6.  Plaintiff alleges that defendant Wright failed to investigate his complaints, did not properly supervise defendants Whalen and Nesmith, and "knew or should have known" that those defendants would deprive him of adequate medical care following his grievances concerning their actions.  *Id.* ¶¶ 12, 16.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on May 1, 2009.  Dkt. No. 1. Plaintiff's complaint names PA Nesmith, Dr. Whalen, and Dr. Wright as defendants and asserts a single claim of deliberate medical indifference, in violation of the prohibition against cruel and unusual punishment under the Eighth Amendment.  *Id.*

---

[2]    Although plaintiff's complaint represents that the letter sent by him to defendant Wright is attached as an exhibit to his complaint, it was not included with the version filed with the court.

4

In response to plaintiff's complaint defendants Nesmith and Whalen have interposed an answer generally denying plaintiff's allegations and asserting various affirmative defenses.  Dkt. No. 18.  For his part, by contrast, in lieu of answering Dr. Wright moved on September 23, 2009 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of plaintiff's claims against him.  Dkt. No. 17.  In his motion, Dr. Wright asserts that plaintiff's complaint fails to disclose a proper basis for concluding that he was personally involved in the conduct giving rise to plaintiff's claims and that the claims against him should therefore be dismissed.  Plaintiff has since responded on October 23, 2009 in opposition to defendant's motion.  Dkt. No. 23.  Defendant Wright's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Dismissal Motion Standard

   A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556  U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator*

*Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

B.    Personal Involvement

In his motion, defendant Wright asserts that plaintiff's allegations against him do not suffice to establish his personal involvement in the acts complained of.  Personal involvement of defendants in alleged

7

constitutional deprivations is a prerequisite to an award of damages under

42 U.S.C. § 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing

*Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and

*McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*,

434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section

1983 cause of action against an individual, a plaintiff must show some

tangible connection between the constitutional violation alleged and that

particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).

Defendant Wright is not a prison physician with personal

responsibility for plaintiff's medical care.  Instead, he serves in a

supervisory role as the chief medical officer for the DOCS.  As a

supervisor, Dr. Wright cannot be liable for damages under section 1983

solely by virtue of being a supervisor; there is no *respondeat superior*

liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d

Cir. 2003); *Wright*, 21 F.3d at 501. Culpability on the part of such a

supervisory official for a civil rights violation can, however, be established

in one of several ways, including when that individual 1) has directly

participated in the challenged conduct; 2) after learning of the violation

through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom*., *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

Among the allegations against defendant Wright is plaintiff's claim that he did not respond to a letter written by Bennett regarding his medical circumstances.  This allegation, if true, is insufficient to establish the requisite personal involvement on the part of Dr. Wright.  *See Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing *Garrido v. Coughlin*, 716 F.Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where

only allegation was that he ignored inmate's request for an investigation));
*see also, Candelaria v. Higley,* No. 04-CV-277A, 2008 WL 478408, at * 2
(W.D.N.Y. Feb. 21, 2008) ("Generally, the allegation that a supervisory
official ignored a prisoner's letter protesting the unconstitutional conduct is
not itself sufficient to allege the personal involvement of the official so as
to create a liability under a § 1983 claim.") (internal quotation and citation
omitted); *Colon v. Coughlin*, 58 F.3d 865, 863 (2d Cir. 1995); *Davis v. City
of New York*, No. 00CIV4309, 2000 WL 1877045, at *9 (S.D.N.Y. Dec. 27,
2000) (finding no personal involvement where supervisory had no other
involvement in the alleged constitutional violation aside from ignoring a
letter of complaint); *Thomas v. Coombe*, No. 95 Civ. 10342, 1998 WL
391143, at *6 (S.D.N.Y. Jul. 13, 1998) ("the fact that an official ignored a
letter alleging unconstitutional conduct is not enough to establish personal
involvement").[3]

Plaintiff also alleges, in very general terms, that defendant Wright
failed to properly supervise defendants Whalen and Nesmith, and that he
knew or should have known of their propensity for denying appropriate
medical care.  Vague and conclusory allegations that a supervisor has

---

[3]     Copies of all unreported decisions cited in this document have been
appended for the convenience of the *pro se* plaintiff.

failed to properly monitor the actions of subordinate employees, however, do not suffice to establish the requisite personal involvement and support a finding of liability.  *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . .  [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

It should be noted that this is not a situation involving an alleged systemic failure or the implementation of an agency-wide policy promulgated or overseen by Dr. Wright.  It seems clear that under such circumstances such as, for example, when implementing a DOCS policy that treatment of Hepatitis C would not be provided to inmates refusing to undergo substance or alcohol abuse treatment, Dr. Wright would bear potential responsibility for any resulting civil rights violation.  *See, e.g., Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at * 11 (N.D.N.Y. Jul. 11, 2007) (McAvoy, J. & Lowe, M.J.).  In this case, however, plaintiff alleges only an isolated situation involving defendant's failure to properly treat his complaints of pain.  Under these circumstances there is no basis

in plaintiff's complaint to conclude that he has stated a plausible section 1983 damage claim against Dr. Wright in his individual capacity.[4]

C.    Leave to Replead

When assessing the sufficiency of a complaint, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94*,* 127 S. Ct. 2197, 2200 (2007) ("'[A] *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss

---

[4]    Dr. Wright is sued in this action in both his official capacity and individually.  *See* Complaint (Dkt. No. 1) ¶ 3.  To the extent that Dr. Wright is named in his official capacity, plaintiff's damage claim against him is barred under the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985);  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).  I am unable to conclude, however, that Dr. Wright, in his official DOCS capacity, is not a proper defendant for the limited purpose of effectuating an injunctive relief that may be awarded.  *See Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996).  Accordingly, he should remain in the action in that limited capacity.

without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

Based on the facts as stated in the *pro se* complaint, the plaintiff's allegations against defendant Wright did not satisfy the criteria for demonstrating his personal involvement in the constitutional deprivation alleged.  If, in an amended pleading, plaintiff can demonstrate that defendant Wright meets one or more of the criteria for personal involvement, he may be able to withstand a motion to dismiss based on lack of personal involvement on the part of defendant Wright.

IV.    SUMMARY AND RECOMMENDATION

The allegations of plaintiff's complaint, even when accepted as true and liberally construed, fail to establish a basis to conclude that defendant Wright was personally involved in the conduct giving rise to plaintiff's claims.  Accordingly, plaintiff's Eighth Amendment deliberate indifference claim as against him must be dismissed.  It is therefore hereby respectfully

RECOMMENDED that defendant Wright's motion to dismiss (Dkt. No. 17) be GRANTED and plaintiff's complaint be dismissed in its entirety as against Dr. Wright, except to the extent plaintiff seeks injunctive relief against him in his official capacity; and it is further

RECOMMENDED, that plaintiff be granted leave to amend.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      April 6, 2010
            Syracuse, NY

14



Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

GREENWALDT, Plaintiff,
v.
COUGHLIN, et al., Defendants.
**93 Civ. 6551 (LAP).**

April 19, 1995.

*MEMORANDUM AND ORDER*

PRESKA, District Judge:

**\*1** Plaintiff Paul P. Greenwaldt ("Greenwaldt") brings this prisoner pro se suit under 42 U.S.C. § 1983, claiming that the defendants, employees of the New York State Department of Correctional Services ("NYSDOCS"), violated his constitutional rights. Defendants Thomas A. Coughlin, III ("Coughlin"), Commissioner of NYSDOCS; Anthony J. Annucci ("Annucci"), Deputy Commissioner and Counsel; Susan E. Butler ("Butler"), Deputy Commissioner; Philip Coombe, Jr. ("Coombe"), First Deputy Commissioner; James Recore ("Recore"), Director of the Bureau of Temporary Release and Robert Hanslmaier ("Hanslmaier"), Acting Superintendent of Woodbourne Correctional Facility ("Woodbourne"), have moved to dismiss. Defendant T. J. Miller ("Miller"), Deputy Superintendent of Woodbourne, has not joined in the motion to dismiss. For the reasons given below, the motion is granted.

*BACKGROUND*

Greenwaldt makes numerous allegations against the defendants. On May 21, 1993, Greenwaldt was transferred to Woodbourne, a medium security facility under the jurisdiction of NYSDOCS. (Am. Compl. ¶¶ 1-2.)[FN1] Upon his arrival at Woodbourne, a sergeant allegedly informed Greenwaldt that at Woodbourne visits were permitted only on alternate Saturdays and Sundays, depending on the first letter of the inmate's last name.[FN2] Greenwaldt asked if there were any exceptions possible, and the sergeant told him to write the Deputy Superintendent to request an exception. (Am. Compl. ¶¶ 3-6.) Greenwaldt, an avid letter writer, proceeded to write to various state public officials concerning what he perceived to be discriminatory visitation rules. (Am. Com pl. ¶¶ 8-11.)

Greenwaldt also complains that on June 3, 1993, he was placed in keeplock without a good reason. (Am. Compl. ¶¶ 15-19.) Greenwaldt claims that, at about that time, he was fined five dollars, without explanation or notice. (Am. Compl. ¶ 20.) On June 5, 1993, Greenwaldt claims to have received notice that he had been found guilty of "refusing a direct order...; interfering with an officer; and, [sic] creating a disturbance." (Am. Compl. ¶ 22.) Greenwaldt then wrote to defendants Coughlin, Coombe, Annucci, and Hanslmaier complaining of perceived procedural violations in connection with his disciplinary proceeding. (Am. Compl. ¶¶ 23-25.) On June 8, 1993, Greenwaldt attended a Tier II disciplinary hearing and was found "not guilty of one charge, and guilty of the other charges." (Am. Compl. ¶¶ 26-28.) Greenwaldt appealed this finding. (Am. Compl. ¶ 30.) He also persisted in his complaints regarding the five dollar fine. (Am. Compl. ¶ 33.)

Greenwaldt also claims that a Sargeant Keesler ("Keesler") threatened him. Greenwaldt alleges Keesler told him, "if you continue to complain, I will personally have my officers write you up for every little thing and it will cost you much more than the five dollars ($5.00) we already got." (Am. Compl. ¶ 34.) Greenwaldt claims he immediately wrote to Coughlin, Coombe and Hanslmaier informing them of Keesler's threats. Hanslmaier responded to Greenwaldt in a letter which, according to Greenwaldt "totally disregarded the written complaint." (Am. Compl. ¶ 36.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

**\*2** Greenwaldt also claims that Recore denied his appeal of the disciplinary hearing judgment. (Am. Compl. ¶¶ 37-41.) Displeased, Greenwaldt wrote to Recore, complaining that he did not receive a copy of the decision and alleging the decision was inaccurate. (Am. Compl. ¶ 42.) Greenwaldt also complained to Recore of alleged violations of New York correctional facility regulations and of allegedly improper administration of the temporary release program. (Am. Com pl. ¶ 44-48.) In fact, Greenwaldt claims Coughlin, Coombe, Butler, Annucci, Recore, and possibly even then-Governor Mario Cuomo, the Attorney General, and members of the New York State Senate and Assembly were together "engaged in an active conspiracy to circumvent and violate the very laws that they swore to uphold" with respect to the administration of the temporary release program. (Am. Compl. ¶ 49.) Greenwaldt also claims he requested Recore to:

take the necessary steps as the DIRECTOR of the TEMPORARY RELEASE PROGRAMS, to rectify the egregious violations of the law and, [sic] the total disregard of the mandates of 7 N.Y.C.C.R. Part 1900 et seq. by the Temporary Release Committees in the various correctional facilities.

(Compl. ¶ 49.)

Greenwaldt alleges that on September 10, 1993, Keesler conducted a search of Greenwaldt's cell and told him that he was "in real trouble because [he] wrote legal papers for other inmates." (Am. Compl. ¶ 52.) Keesler allegedly took legal papers and forms from Greenwaldt's cell. (Am. Compl. at ¶¶ 53-54.) Greenwaldt was served with a Notice of Charges, taken to a Tier III Disciplinary Hearing and "found guilty and sentenced." Though his legal papers were eventually returned to him, he was fined another five dollars. (Am. Compl. ¶¶ 59, 61.)

Greenwaldt alleges that he was subjected to new threats after this incident. According to Greenwaldt, Keesler and Miller "attempted to intimidate [[[Greenwaldt]] by questioning [him] about the lawsuit presently pending." (Am. Compl. ¶ 62.) Greenwaldt claims that Keesler then

said of Greenwaldt to Miller, in Greenwaldt's presence, "this one... you can lock up anytime, he deserves it." (Am. Compl. ¶ 62-63).

Turning to the procedural background of the instant action, Greenwaldt filed his original complaint on September 16, 1993. Defendants Coughlin, Annucci, Butler and Coombe moved to dismiss on November 18, 1993. On December 13, 1993, Greenwaldt filed his memorandum in opposition. Defendants, including Recore, filed an amended memorandum on January 31, 1994. Greenwaldt filed an amended complaint on March 2, 1994. Defendants filed a second amended memorandum on July 15, 1994, Hanslmaier by then having joined the motion as well.

Greenwaldt brings this suit under 42 U.S.C. § 1983, and alleges violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (Am. Compl. ¶¶ 70-74.) He asks that I enjoin the defendants "from further penalizing [Greenwaldt] for exercising his constitutional rights and from confining him to his cell," (Am. Compl. at 22, ¶ 1), and from implementing what Greenwaldt claims is a discriminatory policy on visiting times. (Am. Compl. at 22, ¶ 2). Greenwaldt also seeks declaratory relief declaring unconstitutional the administration of the temporary release program. Finally, he seeks compensatory damages, punitive damages, and costs. Defendants argue, *inter alia,* that there is no basis for holding defendants liable for the alleged violations, and that Greenwaldt has no protected interest, in either the temporary release program or the visitation policy, upon which to base his claims. Defendants' motion to dismiss is granted for the reasons stated below.

*DISCUSSION*

**\*3** Defendants have moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint should not be dismissed unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief."' *Elliott v. Bronson,* 872 F.2d 20, 22 (2d Cir. 1989) (quoting *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)); *Massop v. Coughlin,* 770 F.2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

299, 301 (2d Cir. 1985). In addition, the courts "must construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." *Elliott,* 872 F.2d at 21;*Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987); *Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir. 1974). Where a plaintiff acts pro se, a court must "read his supporting papers liberally, and... interpret them to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (S.D.N.Y. 1995). However, I also note that the Court of Appeals has stated that:

As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.

*Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). *See, e.g., Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988); *Ruderman v. Police Dep't of New York,* 857 F. Supp. 326, 330 (S.D.N.Y. 1994); *Saunders v. Coughlin,* No. 92 Civ. 4289 (SCH), 1994 WL 88108 at *3 (S.D.N.Y. Mar. 15, 1994).

I. Plaintiff's Failure to Allege that the Defendants *Are Personally Responsible for any Violations*

Greenwaldt has failed to allege how the defendants are personally responsible for the injustices he perceives. It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied,*434 U.S. 1087 (1978). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986). The doctrine of *respondeat superior* is not applicable to § 1983 actions brought against corrections officers. *Monell v. Department of Social Serv. of New York,* 436 U.S. 658, 692 (1978); *Bass,* 790 F.2d at 263;*Candelaria v. Coughlin,* No. 93 Civ. 3212 (RWS), 1994 WL 119146 at *4 (S.D.N.Y. Apr. 4, 1994).

Similarly, the fact that a defendant may have been in a "high position of authority is an insufficient basis for the imposition of personal liability" under § 1983. *McKinnon,* 568 F.2d at 934;*see also Wright,* 21 F.3d at 501. There are a number of ways in which a defendant in a supervisory position may be found personally involved in, and therefore liable for, constitutional violations, including: (1) direct participation, (2) failure to remedy a wrong after learning of it, (3) creation or tolerance of a policy under which unconstitutional practices occurred or were allowed to continue, or (4) gross negligence in managing subordinates who committed the violations. *Wright,* 21 F.3d at 501 (citations omitted).

**\*4** Greenwaldt's complaint and memorandum of law ("Pl.'s Mem." or "Memorandum in Opposition") are difficult to follow. He sets forth the facts at length, but mentions his various legal theories only briefly and without connecting those theories to his factual allegations. Thus, it is difficult to assess the merits of his case. However, construing the complaint liberally as I am constrained to do, I take it that Greenwaldt is displeased with various problems he claims to have faced at Woodbourne, including a misbehavior report, a disbursement and surcharge removed from Greenwaldt's account, and threats by a correctional officer to write up Greenwaldt. Greenwaldt also claims that the defendants failed to respond to his numerous letters. The defendants argue they cannot be said to have been personally involved in these alleged constitutional violations and, therefore, cannot be held liable.

In examining the complaint, it is apparent that the only connection between the defendants moving herein and the facts Greenwaldt recites are the numerous letters Greenwaldt claims to have sent the defendants. However, the defendants cannot be held liable on this basis. It is true that "supervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright,* 21 F.3d at 501. However, it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations. *E.g., id.; Murray v. Coughlin,* No. 91-CV-0476E(H), 1995 WL 128968 at *6 (W.D.N.Y.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

Mar. 15, 1995); *Cepeda v. Coughlin,* No. 91 Civ. 2469 (RWS), 1995 WL 23566 at *3 (S.D.N.Y. Jan. 19, 1995); *Clark v. Coughlin,* No. 92 Civ. 0920 (RWS), 1993 WL 205111 at *6 n.2 (S.D.N.Y. June 10, 1993), *aff'd,* 17 F.3d 391 (2d Cir. 1993); *Garrido v. Coughlin,* 716 F. Supp. 98, 100 (S.D.N.Y. 1989) (dismissing that portion of complaint against NYSDOCS Commissioner where his only alleged connection to the case was that "he ignored [plaintiff's] letter of protest and request for an investigation of the allegations made in [the] action"). To the extent that Greenwaldt relies upon his allegations that he sent letters to the defendants, his complaint must be dismissed.

In his Memorandum in Opposition, Greenwaldt contends that he does not rely solely on his letter-writing campaign to allege the personal involvement of the prison officials. Instead, he claims that he joined these defendants because (i) Coughlin directed an investigation by Keesler into Greenwaldt; (ii) the defendants implemented various policies that are not to Greenwaldt's liking; and (iii) Annucci failed to maintain the law library.[FN3] The second of these assertions is addressed *infra.* The first and third claims are too vague to withstand defendants' motion to dismiss. Greenwaldt has not made any "specific allegations of fact." *Barr v. Abrams,* 810 F.2d 358, 364 (2d Cir. 1987). In particular, I note that Greenwaldt has not explained how Annucci's alleged failure to maintain the law library has anything to do with the other defendants. Nonetheless, if Greenwaldt elects to do so, he may attempt to replead these allegations within thirty days of the date of this Memorandum and Order.[FN4]

II. *The Temporary Release Program*

A. *Conspiracy Claims*

**\*5** As stated *supra,* Greenwaldt claims that the defendants and numerous political figures, possibly including former Governor Cuomo, the Attorney General, and members of the New York State Senate and Assembly, were engaged in a conspiracy with respect to the temporary release program. (Am. Compl. ¶ 49.) In order to state a claim under § 1983 for conspiracy:

[T]he complaint must contain more than mere conclusory allegations. And while a plaintiff should not plead mere evidence, he should make an effort to provide some "details of time and place and the alleged effect of the conspiracy." Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."

*Dwares v. City of New York,* 985 F.2d 94, 99-100 (2d Cir. 1993) (citations omitted). *See also* *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993); *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990) (dismissing plaintiff's claims that defendants conspired to deprive plaintiff of his constitutional rights where plaintiff made only "conclusory allegations" and "diffuse averments" without stating a factual basis for his claim or pleading overt acts indicating the existence of a conspiracy), *cert. denied,* 449 U.S. 937 (1991); *Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.), *cert. denied,* 484 U.S. 965 (1987). In the instant case, Greenwaldt's claim of conspiracy is insufficient to survive a motion to dismiss. It is entirely conclusory; Greenwaldt has failed to plead any factual basis indicating the existence of a conspiracy. Greenwaldt will not, however, be permitted to replead his conspiracy claim because, as explained *infra,* he has no protectible interest in the temporary release program.

B. *No Protected Interest*

Greenwaldt may not replead his conspiracy claim because he does not have a federally protected right to participate in New York's temporary release program. In order to state a claim under the due process clause, Greenwaldt must first allege that he was deprived of a property or liberty interest. Only if he claims such a protected interest is it necessary to go on to determine whether the deprivation of that interest occurred without the process that was due under the circumstances. *See generally* *Goss v. Lopez,* 419 U.S. 565 (1975); *Board of Regents v. Roth,* 408 U.S. 564 (1972); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061-62 (2d Cir.) (stating that "[i]n order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

action deprived him of a protected property or liberty interest"), *cert. denied,* 114 S. Ct. 185 (1993). In the instant case, Greenwaldt's claim fails because there is no protected right to participate in New York's temporary release program.

**\*6** It is well-settled that the Constitution itself does not confer a right for an inmate to be conditionally released before serving his full sentence. *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464 (1981); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979) (stating that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). The question thus becomes whether New York conferred an enforceable liberty interest in its temporary release program.

In general, a state may create a protected liberty interest through the use of mandatory language and placement of substantive limits on the authority and discretion of state officials. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461-63 (1989); *Olim v. Wakinekona,* 461 U.S. 238, 249-51 (1983); *Klos v. Haskell,* No. 684, 93-2666, 1995 WL 64776 at \*6 (2d Cir. Feb. 10, 1995). In order for the state to confer such a liberty interest:

(1) the state must have articulated specified "substantive predicates" which limit the discretion of state officials; and (2) it must have employed "explicitly mandatory language," requiring state officials to follow those substantive predicates.

*Klos,* 1995 WL 64776 at \*6.

Turning to New York's temporary release program, it is clear that prisoners do not have a protected interest in being admitted to this program. Neither the governing statute, Correction Law § 851 *et seq.,* nor the regulations, 7 N.Y.C.R.R. § 1900 *et seq.,* contain any assurance of admission into the program. In fact, it is stated explicitly that there are no guarantees of admission:

Participation in the temporary release program shall be a privilege. Nothing contained in this article may be construed to confer upon any inmate the right to participate, or to continue to participate, in a temporary release program.

Correction Law § 855(9). Nothing in the regulations concerning the temporary release program confers a protected entitlement. *See* 7 N.Y.C.R.R. § 1900 *et seq.* In addition, courts that have considered whether inmates in New York have a protected interest in the temporary release program have consistently held that they do not. *See, e.g., Dugar v. Coughlin,* 613 F. Supp. 849, 854-57 (S.D.N.Y. 1985); *Martino v. Gard,* 526 F. Supp. 958, 960 (E.D.N.Y. 1981); *McCormack v. Posillico,* No. 71654, 1995 WL 122170 at \*1 (3d Dep't Mar. 23, 1995); *Grant v. Temporary Release Committee,* 619 N.Y.S.2d 106, 106 (2d Dep't 1994); *Szucs v. Recore,* 618 N.Y.S.2d 473, 473 (3d Dep't 1994); *Walker v. Le Fevre,* 598 N.Y.S.2d 345, 345 (3d Dep't 1993). Consequently, Greenwaldt's claim that he was denied due process in connection with the temporary release program is dismissed without leave to replead.

III. *Visitation Policy*

Greenwaldt is disgruntled with the NYSDOCS visitation policy. (Am. Compl. ¶ ¶ 4-6, 8-10.) It appears that Greenwaldt is most displeased about the fact that visits are permitted daily at maximum security facilities but only on weekends and holidays at medium and minimum security facilities. The Supreme Court unambiguously has rejected the argument that "an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). The question thus becomes whether New York has created a protected interest in visitation. *Klos v. Haskell,* No. 684, 93-2666, 1995 WL 64776 at \*6 (2d Cir. Feb. 10, 1995). It appears that New York has done so. *See Kozlowksi v. Coughlin,* 871 F.2d 241, 242 (2d Cir. 1989) (explaining that the District Court had ruled that a "state-created liberty interest in prison visitation rights existed, and that proper process was due prior to curtailment of these rights"); *Ricco v. Coughlin,* No. 92-CV-0632E(H), 1995 WL 128959 at \*1 (W.D.N.Y. Mar. 15, 1995); *Daniels v. Walker,* No. 93-CV-570, 1995

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

WL 88186 at *5 (N.D.N.Y. Mar. 1, 1995).

**\*7** However, to recognize that inmates have a protected interest in visitation is not to say that the NYSDOCS policy infringe upon that interest. The District Court has considered and rejected a virtually identical claim to Greenwaldt's in an earlier decision, *Windley v. Cuomo,* No. 91 Civ. 3774 (TPG), 1992 WL 123172 at *2 (S.D.N.Y. May 27, 1992). In that case, a prisoner at a New York state facility complained that the facility's elimination of weekday visitation violated his rights under the First Amendment, the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment. *Id.* at *1. Visitation was, however, permitted on weekends and state holidays. *Id.* The District Court dismissed plaintiff's due process claim, explaining that:

Plaintiff's Fourteenth Amendment claim is also without substance. It is true that "[t]he State of New York, by judicial decision, administrative regulation and departmental directive, has granted its prisoners a protected liberty interest in receiving visits from persons of their choice." *Kozlowski v. Coughlin,* 539 F. Supp. 852, 856-57 (S.D.N.Y. 1982). Neither the *Kozlowski* decision nor any provision of state or federal law, however, forbids reasonable regulation of visiting hours by prison officials. There is no showing that the regulation here exceeds the bounds of reasonableness.

*Id.* This reasoning is equally applicable to the instant case, where the policy is the same, *i.e.,* visitation is permitted on the weekends and holidays. Thus, Greenwaldt's claims regarding visitation policy are dismissed with prejudice.

IV. *Equal Protection Claims*

Greenwaldt argues in his Memorandum in Opposition that his complaint should not be dismissed because, he claims, the defendants have violated the Equal Protection Clause of the Fourteenth Amendment with respect to visitation policy and the temporary release program. (Pl.'s Mem. at 7). Greenwaldt claims in his Memorandum in Opposition that:

Plaintiff can *decisively* demonstrate, if permitted to proceed with discovery, that discrimination exists under the rules, regulations, practices and policies of the defendants in relation to visits, temporary release, disciplinary programs, etc.

(Pl.'s Mem. at 7-8 (emphasis in original).)

Greenwaldt's claims that he will be able to establish discrimination by the defendants if he is permitted to engage in discovery does not preclude dismissal of his equal protection claims at this time. Greenwaldt's equal protection claims are properly dismissed at this time because they are vague and inconclusive. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). If Greenwaldt seeks to do so, he may replead his equal protection claims within thirty days.

*CONCLUSION*

With respect to the defendants moving herein, *i.e.,* Coughlin, Annucci, Butler, Coombe, Recore, and Hanslmaier, Greenwaldt's complaint is dismissed with prejudice in its entirety, with the limited exception of those particular claims that Greenwaldt has been granted leave to replead within thirty days. That is, within thirty days of the date of this Memorandum and Order, Greenwaldt may replead his allegations that Coughlin directed an investigation by Keesler into Greenwaldt, that Annucci failed to maintain the law library, and that the defendants violated his right to equal protection with respect to visitation policy and the temporary release program.

FN1. Reference is made to the Amended Complaint dated February 25, 1994.

FN2. Inmates whose names begin with letters A-L would have visitations on Saturday, and those whose names begin with letters M-Z on Sunday. On the following weekend, the order would be reversed. (Am. Compl. ¶4.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

FN3. As Greenwaldt puts it in his memorandum:

In the present case, COMMISSIONER COUGHLIN not only learned of the deprivations through letters from the plaintiff; but went so far as to direct an investigation by the defendant KEESLER. Exactly what more plaintiff must do to show that the Commissioner has direct knowledge and is condoning his subordinates [sic] actions or lack of actions, as the case may be, is beyond the comprehension of the plaintiff.... Plaintiff does not join the Commissioner of Correctional Services and three Deputy Commissioners by virtue of their failure to respond to plaintiff's complaints in letters addressed to them respectively. He (plaintiff) joins the Commissioner and the three Deputy Commissioners by virtue of the investigation ordered by COMMISSIONER COUGHLIN and the implementation of various policy Directives signed and ordered by the Deputy Commissioners and condoned by the Commissioner.... Counsel either fails to understand the responsibilities of either the Commissioner or the three Deputy Commissioners or, while understanding their respective responsibilities would rather distort the factual position of the plaintiff. The perfect example of the above is Deputy Commissioner Annucci's total disregard of his responsibility to maintain the law libraries with the proper materials.

(Pl.'s Mem. at 3-4.) I note that Greenwaldt's allegations regarding the investigation and the law library are glaringly absent from the complaint.

FN4. I note that it may be that, if pleaded properly, Greenwaldt's claim that Annucci failed to maintain the law library might state a claim. For example, it has been held that:

Prisoners have a constitutional right of access

of the courts. Thus prison authorities must assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. The right of access to the courts must ensure that prisoners have a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Courts have held that prisoners do not have a right to access law books per se, but must be provided with any of several methods designed to provide meaningful access to the courts including the use of trained legal assistants.

Bellamy v. McMickens, 692 F. Supp. 205, 214 (S.D.N.Y. 1988). See Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987) (stating that "[w]here a prisoner chooses to proceed pro se with his appeal, the state is required to provide affirmative assistance in the form of adequate law libraries or trained legal assistance"). However, Greenwaldt's allegations are, again, too conclusory to assess, and must be dismissed.

S.D.N.Y. 1995
Greenwaldt v. Coughlin
Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 478408 (W.D.N.Y.)
(Cite as: 2008 WL 478408 (W.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Juan **CANDELARIA**, Plaintiff,
v.
Laurence J. **HIGLEY**; G. Monahan; John Nuttal;
Anthony J. Annucci; Glenn S. Goord, d.b.a., New York
State Department of Correctional Services ("DOCS");
Robert A. Kirkpatrick, d.b.a., Wende Correctional
Facility ("Wende"); S. Post; Stanley Bukowski; Lester
N. Wright; D. Gorczynski; Thomas Torrito; Bella
Howe; Sgt. John Doe; Officer Janes (sic) Doe; Kathy
Sainsbury; and Other Known and Unknown Employees
of Defendant DOCS, Defendants.<sup>FN1</sup>

> FN1. This caption is taken from plaintiff's
> Second Supplemental Complaint (Doc. No. 21),
> the complaint currently in effect. The Second
> Supplemental Complaint misspells defendant
> Kirkpatrick's name as "Kirpatrick." The Court
> has made the correction here.

**No. 04-CV-277A.**

Feb. 19, 2008.

Juan Candelaria, Alden, NY, pro se.

Michael J. Russo, New York State Attorney General's
Office, Buffalo, NY, for Defendants.

DECISION AND ORDER

RICHARD J. ARCARA, Chief Judge.

*INTRODUCTION*

**\*1** Plaintiff Juan Candelaria, a *pro se* prisoner,
commenced this action, pursuant to 42 U.S.C. § 1983, on
April 9, 2004, against the defendants, all of whom are
former or current employees of the New York State
Department of Correctional Services ("DOCS"). In the
compliant,<sup>FN2</sup> the plaintiff claims that while he was
incarcerated with DOCS, at the Wende Correctional
Facility ("WCF"), defendants subjected him to various
constitutional deprivations. Although not clearly stated,
plaintiff appears to be alleging the following claims: (1)
plaintiff has been exposed to second-hand smoke in
violation of the Eighth Amendment to the United States
Constitution; (2) plaintiff has been denied programs and
services at WCF due to his disability in violation of Title
II of the Americans with Disabilities ("ADA") and § 504
of the Rehabilitation Act ("Rehab Act"); (3) plaintiff has
been denied the use of a wheelchair and/or a walker in
violation of the Eighth Amendment; (4) defendant
Bukowski, with the knowledge of defendants Kirkpatrick
and Monahan, sexually assaulted him on one occasion in
violation of the Eighth Amendment; (5) defendant
Bukowski acted with deliberate indifference when he
failed to discontinue aspirin and anti-clotting medication
thereby injuring plaintiff's kidney in violation of the Eight
Amendment; and (6) approximately 18 disciplinary
infractions have been falsely issued and/or in retaliation
for filing a grievance against defendant Higley on or about
late 2003.

> FN2. Reference to the "complaint" herein, refers
> to the Second Supplemental Complaint.

Currently before the Court is defendants' motion to
dismiss various claims. Specifically, the motion seeks: (1)
dismissal of defendants Goord, Annucci, Nuttall and
Wright; (2) dismissal of the ADA and Rehab Act claims;
and (3) dismissal of the official capacity suit claims.

*DISCUSSION*

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2008 WL 478408 (W.D.N.Y.)
(Cite as: 2008 WL 478408 (W.D.N.Y.))

**1. *Defendants Goord, Annucci, Nuttall and Wright***

A state employee cannot be held liable under 42 U.S.C. § 1983 absent an allegation and a showing that he or she was personally involved in the violation of the plaintiff's constitutionally protected rights. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award for damages under § 1983. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1979). "Absent some personal involvement [by a defendant] ... in the allegedly unlawful conduct of his subordinates, he cannot be held liable under § 1983." *Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989) (*quoting Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987)).

In the context of a prisoner § 1983 action, a defendant may be personally involved by: (1) direct involvement in the infraction; (2) failure to remedy the violation after notice; (3) institution of a policy or custom which permitted the infraction to occur, or the continuation of an unconstitutional policy or custom; (4) acting in a manner constituting gross negligence in the management of subordinates responsible for the violation; or (5) exhibiting deliberate indifference by failing to act on information that unconstitutional acts were occurring. *Colon,* 58 F.3d at 973; *Williams v. Smith,* 781 F.2d 319, 323, 324 (2d Cir.1986). In the absence of such involvement, a defendant is not liable. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir.1993).

*\*2* Here, plaintiff fails to allege facts to support his claim that defendants Goord, Annucci, Nuttall and Wright had any direct involvement in the claims raised by the plaintiff. In fact, there is no allegation that they were even present at WCF. Rather, as alleged in the complaint, all of these parties are high ranking DOCS employees who had no personal involvement in the care and/or treatment of the plaintiff. The complaint states that, at the time of the alleged deprivations, Goord was the Commissioner of DOCS; Nuttall was the Deputy Commissioner of DOCS; Annucci was the Deputy Commissioner and Counsel of DOCS and Wright was the Chief Medical Officer of DOCS.

The allegations of involvement regarding these defendants are wholly conclusory and allege that the actions that occurred at WCF were done at the behest or direction of these high ranking DOCS defendants. Yet the complaint offers no factual support for such assertions.

With respect to the claim that plaintiff was exposed to second-hand smoke, plaintiff alleges in the complaint that DOCS has a non-smoking policy "prohibiting indoor tobacco smoking ..." Complaint, at ¶ 16. However, the complaint goes on to allege that despite the policy, both employees and inmates at WCF continue to smoke. *Id.* Even assuming the truth of this allegation, it not does demonstrate that Goord, Annucci, Nuttall and Wright were personally involved as they were not at WCF, nor are facts alleged showing that they were charged with enforcing the policy therein on a day-to-day basis. *See Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (affirming dismissal of claim against governor because plaintiff failed to allege governor's personal involvement in prison's smoking policies).

The only arguable allegation of involvement by any of these defendants involves a letter of complaint attached to the complaint to defendant Annucci complaining of exposure to second-hand smoke. Complaint Exhibit, at 29. Also attached is Annucci's response which advised the plaintiff of the DOCS policy prohibiting smoking and referred the matter to the WCF Superintendent as the issue was one of enforcement. Complaint Exhibit, at 31. Numerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim. "Generally, the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983." *Gayle v. Lucas,* 1998 WL 148416, at \*4 (S.D.N.Y.1998); *cf. Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (plaintiff's allegation that the superintendent of a correctional facility did not respond to his letter of his complaint did not raise a triable issue of fact where the contents of the letter were not specified); *Davis v. City of New York,* 2000 WL 1877045, at \*9 (S.D.N.Y.2000) (finding no personal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 478408 (W.D.N.Y.)
(Cite as: 2008 WL 478408 (W.D.N.Y.))

involvement where supervisory official ignored letter of protest and had no other involvement in the alleged constitutional deprivation); *Richardson v. Coughlin,* 101 F.Supp.2d 127, 132-33 (W.D.N.Y.2000) (granting summary judgment to supervisory official on the ground that he had no personal involvement in the alleged constitutional violation where defendant merely ignored prisoner's letter of complaint); *Pritchett v. Artuz,* 2000 WL 4157, at *6 (S.D.N.Y.2000) (finding no personal involvement and thus no § 1983 liability where supervisory official ignored a prisoner's letter of complaint); *Thomas v. Coombe,* 1998 WL 391143, at 6* (S.D.N.Y.1998) ("the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement"); *Higgins v. Artuz,* 1997 WL 466505, at *7 (S.D.N.Y.1997) (holding the same and collecting cases). In any event, as Annucci properly responded by referring the issue of enforcement of WCF smoking policy to the WCF Superintendent, there is no basis to conclude that he acted with deliberate indifference necessary to state an Eighth Amendment claim.

**\*3** With respect to the other claims in the complaint, there is no factual allegations that defendants Goord, Annucci, Nuttall and Wright were personally involved nor is there any factual assertions demonstrating they were aware of the alleged incidents. Accordingly, defendants Goord, Annucci, Nuttall and Wright must be dismissed as defendants.

## 2. *ADA and Rehab Act Claims*

In this action, plaintiff brings claims against the individual defendants under Title II of the ADA and § 504 Rehab Act for alleged discrimination and failure to provide reasonable accommodations. However, there is no individual liability under Title II or § 504 because liability under the statute only applies against a "public entity," not individuals. *See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001). Accordingly, because neither statute allows for officials to be sued in their individual capacities, plaintiff's ADA and Rehab Act claims must be dismissed.

## 3. *Eleventh Amendment*

In addition to naming the defendants individually, the plaintiff has also sued the defendants in their official capacities. However, it is well settled that claims against State officials in their official capacities are barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, plaintiff's § 1983 claims asserted against individual defendants in their official capacities must be dismissed.

### *CONCLUSION*

For the reasons stated, the Court: (1) grants defendants' motion to dismiss defendants Goord, Annucci, Nuttall and Wright for lack of personal involvement; (2) grants defendants' motion to dismiss all of plaintiff's ADA and Rehab Act claims; and (3) grants defendants' motion to dismiss all claims brought against defendants in their official capacities.

The Court notes that the following claims and defendants remain in the case: (1) exposure to second-hand smoke in violation of the Eighth Amendment; [FN3] (2) denial of the use of a wheelchair and/or a walker in violation of the Eighth Amendment, against defendants Bukowski, Post, Higley, Monahan, Kirkpatrick, Torrito, Gorczynski, Sainsbury, Jane Doe and Sgt. John Doe; (3) sexual assault in violation of the Eighth Amendment, against defendant Bukowski, with the knowledge of defendants Kirkpatrick and Monahan; (4) deliberate indifference to plaintiff's medical needs (failure to discontinue aspirin and anti-clotting medication) in violation of the Eighth Amendment, against defendant Bukowski; and (5) issuance of false misbehavior reports and retaliation in violation of the First and Fourteenth Amendments, against defendants Higley and Monahan. Finally, the Court notes that with regard to defendant Howe, plaintiff has not filed proof of service nor has defendant Howe made an appearance.

FN3. The only defendants against whom this claim is alleged in the complaint are defendants Goord, Annucci, Nuttal and Wright, all of whom

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 478408 (W.D.N.Y.)
(Cite as: 2008 WL 478408 (W.D.N.Y.))

> have now been dismissed. Plaintiff should be
> afforded an opportunity to amend the complaint
> to identify the proper defendants, if any.

The case is referred back to Magistrate Judge Schroeder
for further proceedings.

SO ORDERED.

W.D.N.Y.,2008.
Candelaria v. Higley
Not Reported in F.Supp.2d, 2008 WL 478408 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.



Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
James E. DAVIS, Plaintiff,
v.
CITY OF NEW YORK, New York City Police
Department [FN1] and Howard Safir, Defendants.

FN1. Plaintiff has sued both the City of New
York and the New York City Police Department
("NYPD"). Chapter 17, section 396 of the New
York City Charter provides that "[a]ll actions
and proceedings for the recovery of penalties for
the violation of any law shall be brought in the
name of the city of New York and not that of any
agency except where otherwise provided by
law." The NYPD is an agency of the City of New
York and is therefore a non-suable entity. *See
Morris v. New York City Police Dep't,* No. 98
Civ. 6607, 1999 WL 1201732, at *3 (S.D.N.Y.
Dec. 14, 1999). Accordingly, the claims against
the NYPD are dismissed with prejudice.

No. 00CIV4309 SAS.

Dec. 27, 2000.

Harry Kresky, Esq., Law Office of Harry Kresky, New
York, for Plaintiff.

Paul Aronson, Assistant Corporation Counsel of the City
of New York, New York, for Defendants.

OPINION AND ORDER

SCHEINDLIN, D.J.

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

*1 Plaintiff James E. Davis brings this action pursuant to
42 U.S.C. § 1983 alleging numerous civil rights
violations. Plaintiff also asserts state law tort claims and
seeks attorneys' fees pursuant to 42 U.S.C. § 1988.
Defendants now move, pursuant to Federal Rules of Civil
Procedure 12(b)(1) and 12(b)(6), to dismiss all of
plaintiff's claims. For the reasons that follow, defendants'
motion is granted in part and denied in part.

I. BACKGROUND

A. Factual Background [FN2]

FN2. Unless otherwise noted, all references are
to paragraphs of plaintiff's Amended Complaint
("Am.Compl."), the filing of which was
stipulated to by the parties on September 13,
2000.

Plaintiff joined the New York City Police Department in
1991 and was later assigned to the Police Academy as an
instructor. ¶¶ 1, 6, 7. During his career as a police officer,
plaintiff received various awards and letters of
commendation from political and community leaders, and
was never the subject of disciplinary action. ¶¶ 8, 10.

Plaintiff became active in community affairs following the
Crown Heights riots in 1991. ¶ 11. His activism included
trying to "build bridges of understanding" between the
Black and Jewish communities in Crown Heights and
speaking out publicly against violence and police brutality.
¶¶ 14, 16, 17.

At all relevant times, plaintiff has been a member of the
Democratic Party. ¶ 18. In 1996, he attempted to run for
Congress, but his petition was successfully challenged and
his name did not appear on the ballot. ¶ 19. In 1997,
plaintiff ran for the City Council and actively campaigned
with the support and encouragement of his fellow and
superior police officers. ¶¶ 20, 21. No disciplinary action
was taken against him at that time. ¶ 22. In June 1998,

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

plaintiff challenged incumbent Assembly member Clarence Norman, who also served as Chairperson of the Kings County Democratic Party Organization. ¶ 23. While his name appeared on the ballot, he did not win the nomination. ¶¶ 24, 25.

In July 1998, plaintiff's name appeared on a "slate" petition, without his approval or participation, as the Liberal Party candidate for Assembly. ¶ 26. The Liberal Party did not file the required certificate to nominate a candidate enrolled in another party, the petition did not contain enough signatures to successfully nominate plaintiff as the Liberal Party candidate, and plaintiff did not file the required certificate of acceptance for the nomination. ¶¶ 27-29. Further, on December 15, 1998, the Board of Elections notified plaintiff that his name was erroneously placed on the ballot. ¶ 31. Nonetheless, plaintiff "conducted a minimal campaign to show voters where they could find his name on the ballot." ¶ 32. During this time, plaintiff continued to work and perform all of his duties as a police officer. ¶ 33.

On November 4, 1998, defendants confiscated plaintiff's Police Department badge and firearm and later informed him that he had constructively resigned from the Police Department for failing to decline the Liberal Party nomination in violation of Section 1129 of the New York City Charter.[FN3] ¶¶ 34, 35. On the same date, plaintiff explained the situation to the Commanding Officer of the Police Academy, and on November 5, 1998, plaintiff delivered a letter to Howard Safir attempting to resolve the matter. ¶ 37. Plaintiff made three subsequent attempts to contact Safir to clarify the situation, but received no response. ¶¶ 38, 40-42. Nor did plaintiff receive a response from repeated attempts to contact the Assistant Commissioner of Legal Affairs. ¶ 42.

> FN3. Section 1129 of the New York City Charter provides in relevant part that:

>> Any ... member of the police force ... who shall during his or her term of office be nominated for any office elective by the people ... and shall not, within ten days succeeding same, decline the said nomination, shall be deemed

thereby to have resigned his or her commission and to have vacated his or her office ....

New York City Charter § 1129.

**\*2** On December 3, 1998, plaintiff filed a complaint with the Equal Employment Opportunity Office ("EEO") of the New York City Police Department. ¶ 44. On December 9, 1998, plaintiff filed a notice of claim with the Comptroller of the City of New York.[FN4] ¶ 43. In May 1999, defendants commenced a disciplinary proceeding against plaintiff relying on the same grounds for which he was terminated. ¶ 51.

> FN4. The notice of claim alleged, inter alia, that the violation of constitutional rights and wrongful discharge committed by the NYPD, as well as the NYPD's failure to reinstate plaintiff, were deliberate, malicious and in retaliation against plaintiff as: (1) a minority police officer who has been active in community affairs, and, in particular, in efforts to bring about constructive dialogue between the black and Jewish communities in Crown Heights through marches and other efforts; (2) a police officer who breached the "blue wall of silence" by speaking out against acts of brutality against citizens by New York City police officers; and (3) as a citizen who sought nomination to the Assembly almost defeating Clarence Norman in the primary. ¶ 43.

B. Procedural Background

1. State Court Proceedings

On December 22, 1998, plaintiff brought an Article 78 proceeding in Supreme Court, New York County, challenging his termination as a New York City Police Officer and the Police Department's "failure to remedy it." *See* Verified Petition, Ex. A to 8/15/00 Declaration of Paul Aronson, attorney for defendants ("Aronson Decl ."). Plaintiff alleged that his First Amendment rights were

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

violated because the NYPD retaliated against him for his advocacy in areas of public concern to the minority community and for his campaigning for election to public office. *See id.* ¶¶ 19, 48, 68-70. Plaintiff also alleged that the Police Department's actions were racially motivated. *See id.* ¶¶ 48-49. Plaintiff sought a judgment directing defendants to restore him "to the status of active police officer ... and to his former position of instructor at the Police Academy," directing defendants "to pay petitioner all sums he would otherwise have received ... with interest," and granting "such and further relief as [the court] deems just and proper, including, but not limited to costs, disbursement and reasonable attorneys [sic] fees." *See id.* at Wherefore Clause (a)-(d).

On January 18, 2000, New York State Supreme Court Justice Barbara R. Kapnick held that equitable estoppel prevented enforcement of section 1129 of the New York City Charter as a basis for removing plaintiff from his position. *See* 1/18/00 Decision of Judge Kapnick ("Kapnick Decision"), Ex. B to Aronson Decl. Judge Kapnick further ordered that respondents Howard Safir and the New York City Police Department restore plaintiff to "the status of active police officer" and pay petitioner all sums he would have received with interest, with no mention of attorneys' fees.[FN5] *Id.* at 10.

> FN5. Pursuant to Judge Kapnick's order, defendants restored plaintiff to active duty, paid some of his wages, and assigned plaintiff to the night shift in the 69th Precinct in Brooklyn. *See* Am. Compl. ¶¶ 56, 57.

2. Federal Court Proceedings

On January 27, 2000, plaintiff purchased an index number in the Clerk's office of the New York State Supreme Court, New York County, and on May 25, 2000, plaintiff served a Summons with Notice on the New York City Police Department. *See* Summons with Notice, Ex. C to Aronson Decl. On June 12, 2000, defendants served a Demand for the Complaint and removed the action to this Court. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint, at 3.

Plaintiff's Amended Complaint makes the following claims: (1) his termination and the Department's subsequent actions were in retaliation for his exercise of his First Amendment rights; (2) defendants have not complied with Judge Kapnick's Order;[FN6] (3) defendants were motivated by racial discrimination; and (4) defendants are liable for the intentional infliction of emotional distress and prima facie tort under New York law. *See* Am. Compl. ¶ ¶ 59-69. Finally, plaintiff seeks an award of reasonable attorneys' fees under 42 U.S.C. § 1988.[FN7] *See id.* ¶ 70.

> FN6. To the extent plaintiff's federal complaint seeks enforcement of certain aspects of the state court judgment, plaintiff must pursue his remedies in that court.

> FN7. Any award of attorneys' fees is premature at this time. *See Puglisi v. Underhill Park Taxpayer Ass'n.,* 964 F.Supp. 811, 815 (S.D.N.Y.1997) ("[u]nder § 1988, an award of attorney's fees is available to the *prevailing party*") (emphasis added).

II. DISCUSSION

A. Standard for Dismissal under Rule 12(b)(1)

**\*3** Federal subject matter jurisdiction exists only when a "federal question" is presented under 28 U.S.C. § 1331, or there is diversity of citizenship under 28 U.S.C. § 1332. Even if there is a predicate for the exercise of federal jurisdiction, federal district courts lack subject matter jurisdiction if the exercise of that jurisdiction would result in the reversal or modification of a state court judgment. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923).[FN8] Where jurisdiction is lacking, the district court must dismiss the lawsuit without regard to its merits. *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996). The burden of proof in establishing federal jurisdiction falls on the party seeking to invoke that jurisdiction. *See Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

FN8. The Supreme Court applied this principle in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983), and held that federal district courts do not have subject matter jurisdiction to review challenges to the judicial determinations of state courts "even if those challenges allege that the state court's action was unconstitutional."

"In considering motions to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Serrano v. 900 5th Ave. Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998) (citing *Atlantic Mut. Ins. Co. v. Balfor Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992)). The Court is not confined to the four corners of the Complaint, however, and may consider evidence outside the pleadings such as affidavits and other documents. *See Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

B. Motion to Dismiss Standard

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). "[T]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (quotation marks and citation omitted); *see also Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) ("The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (quotation marks and citation omitted). Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Robuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (quotation marks and citations omitted).

To properly rule on a 12(b)(6) motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmoving party's favor. *See Harris,* 186 F.3d at 247. Moreover, the court must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference. *See Dangler v New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999). However, the court may also consider documents, while not explicitly incorporated into the complaint, that "plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 44 (2d Cir.1991)).

C. Rooker-Feldman Doctrine

*4 In their motion to dismiss, defendants contend that this Court lacks subject matter jurisdiction pursuant to the judicially crafted Rooker-Feldman doctrine. This doctrine holds that a federal court is without subject matter jurisdiction if the federal claim is "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483 n. 16. A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

The Second Circuit has interpreted the term "inextricably intertwined" to be co-extensive with the law of preclusion. *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 199-200 (2d Cir.1995). Accordingly, "where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion." *Id.* (citations omitted).

Res judicata (claim preclusion) does not bar any of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

plaintiff's claims because the money damages plaintiff now seeks were not available in the Article 78 proceeding. *See Bracey v. Safir,* No. 98 Civ. 6565, 1999 WL 672564, at *3 (S.D.N.Y. Aug. 26, 1999); *see also Beharry v. M.T.A. New York City Transit Auth.,* No. 96 Civ. 1203, 1999 WL 151671, at *5 (E.D.N.Y. Mar. 17, 1999), *aff'd,* 2000 WL 1786333 (2d Cir.2000) ("[R]es judicata does not bar a claim under 42 U.S.C. § 1983 where a plaintiff has previously brought a related Article 78 proceeding alleging a violation of his constitutional rights, and subsequently, ... seeks monetary damages for the violation of those rights."). Moreover, defendants do not assert that any of plaintiff's claims are barred by res judicata. The question, then, is whether plaintiff's section 1983 claim is barred by collateral estoppel (issue preclusion).[FN9]

> **FN9.** Federal courts are required under 28 U.S.C. § 1738 to "give full faith and credit to judgments entered by state courts of competent jurisdiction. The federal court presented with a state court judgment is required to give that judgment the same force and effect as it has in the state in which it is rendered." *Mitchell v. National Broad. Co.,* 553 F.2d 265, 274 (2d Cir.1977) (citations omitted). Accordingly, this Court must follow New York law on collateral estoppel. *See Vasquez v. Van Lindt,* 724 F.2d 321, 325 (2d Cir.1983).

Under New York law, issue preclusion applies where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995).

Courts in this Circuit have applied the Rooker-Feldman bar only where the factual underpinnings of a plaintiff's subsequent constitutional claim were adversely decided in a previous state proceeding. For example, in *Moccio,* plaintiff's section 1983 claim alleging violations of due process and equal protection was held to be barred because the "issues essential to both causes of action that Moccio brought under § 1983 were actually and necessarily decided adversely to Moccio in the Article 78 proceeding ." *Moccio,* 95 F.3d at 200. With regard to his

claim of lack of due process, Moccio conceded that the focus of the Article 78 proceeding was whether the "[employer's] decision was arbitrary, capricious or contrary to law." *Id.* at 201.

**\*5** Here, contrary to defendants' claim that the state court "evidently rejected" plaintiff's constitutional claims, the state court did not address plaintiff's First Amendment claim. *Cf. Marden v. Dinin,* 22 F.Supp.2d 180, 186 (S.D.N.Y.1998) (Rooker-Feldman doctrine barred federal court allegations of retaliatory termination for engaging in constitutionally protected political activities where state court previously found that plaintiff's dismissal was for misconduct and not the consequence of a political vendetta). While plaintiff raised his First Amendment claim in the state court proceeding,[FN10] Judge Kapnick did not address that claim, instead deciding the case on equitable grounds.[FN11] *Cf. Parker v. Blauvelt Volunteer Fire Co., Inc.,* 690 N.Y.S.2d 478, 483 (1999) (where state court held that all of plaintiff's "remaining contentions [we]re without merit", plaintiff's constitutional violations were necessarily decided even though not primarily addressed).

> **FN10.** Plaintiff claimed that "to have acted as they did toward petitioner because he campaigned or otherwise engaged in advocating his election to public office ... would violate petitioner's right of free speech under the Constitutions of the United States and the State of New York." *See* Verified Petition, ¶ 68, Ex. A to Aronson Decl.

> **FN11.** Judge Kapnick's decision merely holds that it would be inequitable to apply section 1129 of the New York City Charter to Davis now, given the Police Department's acquiescence, even encouragement, in his prior political activities. *See* Kapnick Decision, at 9. Additionally, the state court found that even if Davis "held himself" out as a candidate in 1998 by conducting a limited campaign, such actions do not technically violate section 1129. *Id.*

Given that plaintiff's First Amendment claim was never

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

addressed or decided, even obliquely, in the Article 78 proceeding, the Rooker-Feldman doctrine cannot bar that claim. Moreover, a judgment by this Court would not effectively overrule the prior state court judgment. Without addressing the First Amendment issue, Judge Kapnick held that plaintiff could not be terminated by the Police Department pursuant to section 1129, where it had previously acquiesced in his conduct.[FN12]See Kapnick Decision at 9. If this Court eventually finds that plaintiff's civil rights were violated, that finding would not effectively overrule the decision of the state court. Thus, the Rooker-Feldman doctrine does not divest this Court of jurisdiction over plaintiff's claims. Accordingly, defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.

> FN12. Contrary to defendants' assertion, Judge Kapnick's statement that application of equitable estoppel "is limited to the facts of this case and will prevent a 'manifest injustice,' without unduly damaging public policy or otherwise preventing enforcement of the guidelines set forth in § 1129 of the City Charter as to petitioner ... in the future" does not mean that she addressed plaintiff's constitutional claim.

D. Plaintiff's Claims

1. Retaliation

Plaintiff claims that his First Amendment rights were violated when defendants retaliated against him based on his speech.[FN13] To establish a prima facie case of retaliation, an employee must show "that (1)[he] engaged in protected activity; (2)[his] employer was aware of that activity; (3)[he] suffered adverse employment consequences; and (4) a causal connection exists between the protected activity and the adverse employment action." *Domenech v.. City of New York,* 919 F.Supp. 702, 706 (S.D.N.Y.1996); *see also Bernheim v. Litt,* 79 F.3d 318, 324-25 (2d Cir.1996).

> FN13. Plaintiff was allegedly subject to the following retaliatory employment actions: (1)

failure to return him to active duty after he alerted them to the mistake on the Liberal Party ballot; (2) failure to restore him to his position at the Police Academy; (3) commencing a disciplinary proceeding against him; and (4) failure to fully comply with the state court decision. *See* Am. Compl. ¶¶ 63-66.

With regard to the first element, for a public employee's speech to be protected by the First Amendment, it must touch on a matter of public concern. *See Cahill v. O'Donnell,* 75 F.Supp.2d 264, 271-72 (S.D.N.Y.1999). Here, not only did plaintiff speak out against police brutality, he was active in community affairs where he promoted racial harmony. *See, e.g., Rookard v. Health and Hosp. Corp.,* 710 F.2d 41, 46-47 (2d Cir.1983) (allegations of corruption in agency); *Walton v. Safir,* No. 99 Civ. 4430, 2000 WL 1741676, at *6 (S.D.N.Y. Nov. 27, 2000) (public criticism of Street Crime Unit for engaging in racially discriminatory conduct); *Cahill v. O'Donnell,* 7 F.Supp.2d 341, 349 (S.D.N.Y.1998) (public criticism of racially discriminatory policies of police department unit). More importantly, however, plaintiff's participation in a "minimal campaign to show voters where they could find his name on the ballot," despite knowing that he was not nominated, was clearly a matter of public concern and the alleged basis for his termination.[FN14] Accordingly, plaintiff has pled the first element of a retaliation claim.

> FN14. The Amended Complaint does not specify why Davis was showing voters where his name was on the ballot. Whether it was to show them that he was not properly nominated or to see how many votes he could garner, the political process is a matter of public concern.

**\*6** The Amended Complaint also satisfies the second element of a retaliation claim. Given that plaintiff publicly spoke of matters of public concern and publicly campaigned for election and that defendants' actions were prompted by Davis' appearance on the Liberal Party ballot, the Police Department was obviously aware of his activities. In fact, in 1997, he actively campaigned "with the support and encouragement of his fellow and superior officers." Am. Compl. ¶ 21.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

Plaintiff has also adequately alleged an adverse employment action. Plaintiff alleges that he was terminated, not reinstated, lost earnings, incurred attorneys' fees, and suffered damage to his reputation and career. *See id.* ¶¶ 39, 51, 54, 55; Notice of Claim ¶ 4.

Finally, plaintiff has adequately alleged the requisite nexus between the exercise of his First Amendment rights and defendants' alleged retaliatory conduct. *See Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) ("Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."). Davis alleges that he was directed to surrender his badge and firearm on November 4, 1998. *See* Am. Compl. ¶ 34. This occurred within days of Davis' minimal campaign "to show voters where they could find his name on the ballot." *Id.* ¶ 32. He received no advance notice of defendants' action and alleges that defendants made at best a perfunctory investigation "designed to support what had already been decided." *Id.* ¶ 35. Plaintiff promptly brought the true facts to the attention of various city officials but was not restored to active duty. *See id.* ¶¶ 37-42. He claims that defendants' actions were "in retaliation against plaintiff for the exercise of his first amendment rights in the form of participation in the political process and his insistence on legally vindicating those rights." *Id.* ¶¶ 63-66. Thus, defendants have failed to demonstrate that plaintiff can prove no set of facts in support of his First Amendment retaliation claim which would entitle him to relief. Accordingly, defendants' motion to dismiss this claim is denied.

2. Racial Discrimination

To state a claim under section 1981, a plaintiff must show: (1) that he is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities-here the making and enforcing of contracts. *See Lauture v. International Bus. Machs. Corp.,* 216 F.3d 258, 261 (2d Cir.2000) (section 1981 provides a cause of action for racially discriminatory termination

from at-will employment).

Section 1981 is violated where plaintiff shows racially motivated actions and purposeful discrimination. *See General Bldg. Contractors Ass'n. v. Pennsylvania,* 458 U.S. 375, 391 (1982). The Second Circuit has stated that

**\*7** [a] plaintiff alleging racial or gender discrimination ... must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.

*Yusuf v. Vassar Coll.,* 35 F.3d 709, 713 (2d Cir.1994) (citations omitted). *See also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993) (complainant must "offer more than conclusory allegations that he was discriminated against because of his race."); *Cleveland-Goins v. City of New York,* No. 99 Civ. 1109, 1999 WL 673343, at \*3 (S.D.N.Y. Aug. 30, 1999) (plaintiff must plead more than mere "naked assertions" to succeed on a claim brought under section 1981). Further, plaintiff must make fact specific allegations of a causal link between the defendant's actions and the plaintiff's race. *See Waldron v. Rotzler,* 862 F.Supp. 763, 769 (N.D.N.Y.1994) ("plaintiff must allege some facts that demonstrate that his race was the reason for the defendants' actions").

Plaintiff undoubtedly meets the first element of a section 1981 claim, as he identifies himself as an African-American. *See* Am. Compl. ¶ 67. However, the rest of his Amended Complaint is devoid of any facts from which one could infer that he was discharged because of his race. Plaintiff references an EEO complaint which merely states that "respondents are 'stalling' the reinstatement process, because of his 'race' and 'color.' " *See* Am. Compl. ¶ 44.[FN15] The Amended Complaint goes on to allege that plaintiff states a claim under both section 1983 and section 1981 as "defendants' actions were motivated by animus towards him as an African-American police officer who stood up for his rights and spoke out for the rights of other African Americans." *See id.* ¶ 68. These

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

conclusory allegations do not support the inference that plaintiff's dismissal was motivated by racial animus. Accordingly, plaintiff's claims of racial discrimination, whether brought under section 1983 or 1981, are dismissed.

> FN15. While this EEO Complaint was referenced in the Amended Complaint, it was not annexed to the Complaint. A copy of the EEO Complaint was obtained from the NYPD's Office of Equal Employment Opportunity.

E. Custom or Policy

Claims against a municipality must allege that a deprivation of plaintiff's rights was caused by a custom or policy of the municipality. *See* Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978); *see also* Barrett v. Harwood, 189 F.3d, 297, 303 (2d Cir.1999), *cert. denied,* 120 S.Ct. 2719 (2000) ("In order to state a § 1983 claim against a municipality, a litigant must allege that the municipality implemented and adopted a 'policy statement, ordinance, regulation, or decision' or established or acquiesced in a custom that caused the unconstitutional activity.") (quoting Monell, 436 U.S. at 690-91). The plaintiff must allege "some facts that make possible the inference of a policy giving rise to municipal liability." Reinaldo Morales & Dynamic Keys v. New York City Police Dep't, 97 Civ. 7151, 2000 WL 10436, at *2 (S.D.N.Y. Jan. 6, 2000); Perez v. County of Westchester, 83 F.Supp.2d 435, 438 (S.D.N.Y.), *aff'd,* 2000 WL 1761097 (2d Cir.2000) (complaint dismissed where plaintiff did not include any facts showing existence of policy and did not generally indicate the nature of the policy). A single incident exemplifying a custom or policy will generally not give rise to municipal liability. *See* Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993); Morales, 2000 WL 10436, at *2 (two incidents of dissimilar police misconduct did not create an inference of a policy).

**\*8** The Amended Complaint adequately alleges the existence of a custom or policy. The Amended Complaint pleads that the NYPD engages in discriminatory assignment of and retaliation against outspoken police

personnel. *See* Am. Compl. ¶ 60. To illustrate the existence of the policy, plaintiff cites the case of a high-ranking police officer who spoke out about the handling of sexual harassment claims in a Staten Island precinct and was subsequently stripped of her duties.[FN16] *See id.* ¶ 60. In addition, he claims that the actions of defendants toward him "resulted from a custom and policy of defendants" of retaliating against outspoken officers. *See id.* ¶ 59. Furthermore, with regard to custom or policy, I take judicial notice of the decision in Walton v. Safir, 2000 WL 1741676. In Walton, this Court held that plaintiff's dismissal was in retaliation for the exercise of her First Amendment rights, specifically, public criticism of the Street Crime Unit, an elite subdivision of the NYPD to which plaintiff was formerly assigned. 2000 WL 1741676, at *14. The Court found the City of New York liable for this "official action," stating that "the decision to terminate plaintiff Walton's employment as a New York City police officer was made at the highest level of the Department." *Id.* at *11. At the pleading stage, the incidents involving plaintiff, Marsh and Walton show a custom or policy sufficient to impose liability on the City of New York for plaintiff's retaliation claim.[FN17]

> FN16. A newspaper article attached to the Declaration of Harry Kresky, plaintiff's attorney, sworn to on September 6, 2000 ("Kresky Decl.") states that Sandra Marsh was the deputy commissioner in charge of handling sexual harassment complaints. After investigating certain claims, she found that they were improperly handled and that top officials engaged in retaliation against those who filed claims against them and tried to impede her investigation. Subsequent to a "reinvestigation" ordered by her superiors, her work assignments diminished and her aide was transferred. *See* Bob Herbert, *In America; Freeze-Out at Police Plaza,* N.Y. Times, July 13, 2000, attached as Ex. C to Kresky Decl. The other example plaintiff offers is the transfer of black police officers to the 70th precinct following the Abner Louima incident based on their race. *See* Katherine E. Finkelstein, *Black Officers Win Lawsuit Over Move to Louima Precinct,* N.Y. Times, June 16, 2000, attached as Ex. B to Kresky Decl. However, it was never alleged that this transfer was made in retaliation against

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

outspoken police officers.

FN17. Plaintiff's allegation that the City has a custom or policy of engaging in unlawful employment practices based on race need not be considered as plaintiff's claims of race discrimination have failed as a matter of law. Whether such an unlawful policy exists is no longer relevant.

F. Howard Safir [FN18]

FN18. The Amended Complaint does not state that plaintiff is suing Safir in his personal capacity, but this is assumed as a claim against Safir in his official capacity would be deemed a claim against the City itself. *See Walton,* 2000 WL 1741676, at *9 (recognizing that suits brought against government officials in their official capacities are only another way of bringing an action against the entity of which the officer is an agent).

Plaintiff "cannot bring a § 1983 claim against individuals based solely on their supervisory capacity or the fact that they held high positions of authority." *Thomas v. Coombe,* No. 95 Civ. 10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998). A plaintiff must demonstrate a supervisory official's personal involvement in the alleged constitutional violations to recover damages under section 1983. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). The "[f]ailure to set forth facts pertaining to such personal involvement results in a 'fatally defective' complaint." *Murphy v.. Neuberger,* No. 94 Civ. 7421, 1996 WL 442797, at *3 (S.D.N.Y. Aug. 6, 1996) (quoting *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987)). Personal involvement on the part of supervisor can be found in the following ways:

(1) the [supervisor] participated directly in the alleged constitutional violation, (2) the [supervisor], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [supervisor] created a policy or custom under which constitutional violations

occurred, or allowed the continuance of such a policy or custom; (4) the [supervisor] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [supervisor ] exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*9 *Colon v. Coughlin,* 58 F.3d at 873 (quotation marks and citation omitted) (emphasis added); *see also Wright,* 21 F.3d at 501.

Defendants argue, and this Court agrees, that Safir was not personally involved based solely on his failure to respond to letters sent by Davis. *Cf. Colon v. Coughlin,* 58 F.3d at 873 (plaintiff's allegation that the superintendent of a correctional facility did not respond to his letter of his complaint did not raise a triable issue of fact where the contents of the letter were not specified); *Higgins v. Artuz,* No. 94 Civ. 4810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, J.) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations") (quotation marks and citations omitted) (collecting cases); *Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989) (complaint against NYSDOCS Commissioner dismissed where his only alleged connection to the case was that he "ignored [plaintiff's] letter of protest and request for an investigation of the allegations in [the] action"). [FN19]

FN19. While plaintiff is not an inmate appealing to the commissioner of a correctional institution, his situation is not dissimilar given the position Safir had in the NYPD. Like those in charge of running a prison, Safir was in charge of managing the entire NYPD. Safir's duties did not involve personally responding to grievances filed by police officers. Accordingly, his failure to do so here cannot be deemed personal involvement in plaintiff's alleged injury.

While plaintiff points to the Marsh and Louima incidents in support of his claim that the City has a custom or policy

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

of discriminatory assignment and retaliatory actions against outspoken officers, the Amended Complaint merely alleges, upon information and belief, that "Safir was actively involved in both of the aforesaid situations." [FN20] Am. Compl. ¶ 61. This conclusory allegation of Safir's involvement is insufficient to establish his personal involvement in the alleged unconstitutional custom or policy of retaliating against outspoken police officers that adversely affected plaintiff. *See Broduer v. City of New York,* No. 96 Civ. 9421, 1998 WL 557599, at *7 (S.D.N.Y. Sept. 2, 1998), *aff'd,* 182 F.3d 8998 (2d Cir.1999) (section 1983 claim against the Mayor dismissed where complaint contained no specific factual allegations allowing an inference that the Mayor was personally involved in depriving plaintiff of his civil rights); *Smith v. Keane,* No. 96 Civ. 1269, 1998 WL 146225, at *6 (S.D.N.Y. Mar. 25, 1998) (dismissing claims against supervisor where conclusory allegations in complaint lacked any particularized facts allowing a finding of supervisor's personal involvement in constitutional violations). Accordingly, Howard Safir is dismissed as a defendant from this lawsuit.

> **FN20.** While Safir may have been personally involved in the Marsh case-a case involving a high-ranking Deputy Commissioner-this in no way demonstrates personal involvement in the instant case as plaintiff has not alleged that Safir created or maintained the unconstitutional custom or policy that adversely affected him.

G. New York State Claims

1. Intentional Infliction of Emotional Distress

To properly state a claim for intentional infliction of emotional distress, plaintiff must show: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996). To satisfy the first element, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Murphy v. American Home Prods. Corp.,* 461 N.Y.S.2d 232, 236 (1983) (quotation marks and citation omitted). Courts routinely dismiss claims for emotional distress in the employment context in the absence of battery or sex discrimination. *See Gerzog v. London Fog Corp.,* 907 F.Supp. 590, 604 (E.D.N.Y.1995). Moreover, public policy bars intentional infliction of emotional distress against a government entity. *See Lauer v. City of New York,* 659 N.Y.S.2d 57, 58 (2d Dept.1997).

*10 Here, Davis fails to meet the first required element. He alleges "severe stress, anxiety and emotional trauma as a result of his summary termination." Am. Compl. ¶ 55. This is not a case where, for example, "severe mental pain or anguish [was] inflicted through a deliberate and malicious campaign of harassment or intimidation." *Nader v. General Motors Corp.,* 307 N.Y.S.2d 647, 654 (1970). Further, courts routinely deny attempts to bootstrap wrongful termination claims into intentional infliction of emotional distress claims. *See, e.g., Leibowitz v. Bank Leumi Trust Co. of New York,* 548 N.Y.S.2d 513, 521-22 (2d Dept.1989) ("[P]laintiff should not be allowed to evade ... or to subvert the traditional at-will rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress."). The Amended Complaint merely alleges that plaintiff has stated a claim for intentional infliction of emotional distress. *See* Am. Compl. ¶ 69. Mere conclusory allegations are insufficient as a matter of law to support a claim for intentional infliction of emotional distress. *See Ruffolo v. Oppenheimer & Co., Inc.,* No. 90 Civ. 4593, 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991), *aff'd,* 949 F.2d 33 (2d Cir.1991). Furthermore, the "mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Huff v. West Haven Bd. of Educ.,* 10 F.Supp .2d 117, 123 (D.Conn.1998) (quotation marks and citation omitted). Accordingly, plaintiff's intentional infliction of emotional distress claim is hereby dismissed as a matter of law.

2. Prima Facie Tort

To properly plead prima facie tort, a plaintiff must show: (1) intentional infliction of harm; (2) special damages; (3) by an otherwise lawful act. *See Twin Labs., Inc. v. Weider*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)
(Cite as: 2000 WL 1877045 (S.D.N.Y.))

*Health & Fitness,* 900 F.2d 566, 571 (2d Cir.1990). The Second Circuit has held that the crux of the claim is "disinterested malevolence", meaning that defendant's conduct must not only be harmful, but that the *sole* intent was to harm. *Id.* Because plaintiff does not allege that defendants were solely motivated by "disinterested malevolence", he does not properly state a claim for prima facie tort. Moreover, to the extent that plaintiff bases his cause of action on wrongful termination, it must be dismissed as there is no cause of action for the wrongful termination of an at-will employee based on prima facie tort. *See Dailey v. Tofel, Berelson, Saxl & Partners, P.C.,* 710 N.Y.S.2d 95, 96 (2d Dept.2000). Because plaintiff has failed to establish that intention to harm him was the sole motive for his discharge, his claim of prima facie tort must be dismissed. *See Angrisani v. City of New York,* 639 F.Supp. 1326, 1338 (E.D.N.Y.1986) ("New York State Courts have confined prima facie tort to extreme cases and have zealously prevented it from becoming a catchall for assorted tortious conduct.").

III. CONCLUSION

**\*11** For the foregoing reasons, defendants' motion to dismiss is denied with respect to plaintiff's First Amendment retaliation claim. Defendants' motion is granted with respect to plaintiff's claims of racial discrimination and his state law claims. The claim that the City of New York has an unlawful custom or policy of retaliation against outspoken officers is sufficient; however, the claim alleging a custom or policy of unlawful employment actions based on race is not. Furthermore, all claims against Howard Safir are hereby dismissed. A conference has been scheduled for January 5, 2001 at 3:30 p.m.

SO ORDERED:

S.D.N.Y.,2000.
Davis v. City of New York
Not Reported in F.Supp.2d, 2000 WL 1877045 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1998 WL 391143 (S.D.N.Y.)
(Cite as: 1998 WL 391143 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Elizabeth THOMAS, Plaintiff,
v.
Commissioner Philip COOMBE Jr., et, al.,[FN1]
Defendants.

> FN1. Plaintiff has also named the following individuals as defendants: Elaine Lord, Superintendent of Bedford Hills Correctional Facility ("Bedford Hills"), Sergeant R. Beckel from Bedford Hills, Officers Laba, O'Conner, and Irwin from Bedford Hills, Dr. Barbara Griffin, Director of the Medical Department at Bedford Hills, Tom Parise, Food Administrator at Bedford Hills, Lee Krum, Supervising Nurse at Bedford Hills, and Dr. Fernandez, Director of Health Services at the Albion Correctional Facility.

No. 95 Civ. 10342(HB).

July 13, 1998.

**Opinion and Order**

BAER, J.[FN2]

> FN2. Carolyn Hahn, a second year student at the Georgetown University Law Center, assisted in the research and preparation of this decision.

**\*1** Defendants move to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the

motion is GRANTED in part and DENIED in part.

**I. Background**

*A. Procedural History*

Plaintiff is a prisoner in the custody of the New York State Department of Correctional Services ("DOCS") and is currently incarcerated at Albion Correctional Facility ("Albion"). The incidents alleged in her Second Amended Complaint, however, primarily occurred while she was incarcerated at the Bedford Hills Correctional Facility ("Bedford Hills"). This is the defendants' second 12(b)(6) motion to dismiss.[FN3] In January 1998, I denied defendants Coombe, Lord, Beckel, Laba, O'Conner, Irwin, Griffin and Krum's first 12(b)(6) motion to dismiss and granted plaintiff injunctive relief pertaining to the provision of medical treatment.[FN4] The defendants make many of the same arguments in their second motion to dismiss. Since this Court does not adhere to the doctrine of if at first you don't succeed, try, try again, I remain unpersuaded that a complete dismissal is warranted.[FN5] The defendants based the first motion to dismiss on plaintiff's Amended Complaint filed in March 1996. Plaintiff submitted a Second Amended Complaint on February 6, 1998, and it is this Complaint the present motion to dismiss addresses.

> FN3. Defendants are all represented by the Attorney General's office. The Attorney General failed to name Dr. Griffin as a defendant he represented, but I will assume she is represented by the Attorney General since Dr. Griffin is a state employee.

> FN4. There is no longer any dispute with respect to the medical treatment that is the subject of the injunctive relief initially granted in this Court's previous decision.

> FN5. In my first opinion, I ruled that plaintiff's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 391143 (S.D.N.Y.)
(Cite as: 1998 WL 391143 (S.D.N.Y.))

Eighth Amendment claim should not be dismissed on the ground that she failed to establish deliberate indifference to serious medical needs. *See Thomas v. Coombe,* 1998 WL 20000, at *2-3 (S.D.N.Y. Jan.28, 1998). I also rejected defendants' argument that the case should be dismissed on qualified immunity grounds. *Id.* at *3. I denied defendant Coombe and defendant Krum's motion to dismiss and granted plaintiff leave to amend her Complaint. *Id.* at *3-4. Plaintiff, however, failed to amend her Complaint with respect to these defendants.

*B. Statement of Facts*

Plaintiff's Second Amended Complaint added two more defendants-Tom Parise, Food Administrator at Bedford Hills and Dr. Fernandez, Director of Health Services at Albion. However, the claims made by the plaintiff are essentially the same. Plaintiff alleges that defendants violated the Eighth Amendment prohibition against cruel and unusual punishment. She brings this suit for related damages under 42 U.S.C. § 1983. Plaintiff claims, initially, that she informed Tom Parise, the Food Administrator in charge of the mess hall at Bedford Hills, of her back condition, but was told to continue her duties, including heavy lifting. (Compl. pp. 2-3) She further alleges that officials ignored the orders of the medical department at Bedford Hills that she be restricted to light duty until she was transferred out of the mess hall. (Compl. p. 3)

Plaintiff's allegations though, primarily focus on the treatment she received after suffering an injury to her foot and lower back on July 30, 1995 while working in the mess hall at Bedford Hills. (Compl. p. 3) Plaintiff claims that Officers Laba and Irwin waited over an hour and fifteen minutes after she notified them of her injury before calling for an escort to take her to medical personnel. (Compl. p. 3) Upon returning to her housing unit, Sergeant Beckel ordered plaintiff to report back to work or face disciplinary action despite being informed that plaintiff was suffering from extreme pain in her foot and lower back. (Compl. p. 4) According to the plaintiff, Sergeant Beckel then ordered plaintiff to wear shower shoes when she was unable to put on her mandatory work boots.

(Compl. p. 4)

*2 On July 31, plaintiff was seen by Nurse Meyers who told Officer O'Conner that plaintiff could wear her work boots. (Compl. p. 4) When plaintiff could not comply with an order to wear her boots given swelling in her foot, she was placed in keep-lock status. While under keep-lock status, officials on three occasions allegedly failed to provide an escort so plaintiff could attend her emergency medical appointment with Dr. Griffin. (Compl. p. 4) Eventually, Plaintiff saw Dr. Griffin and was referred to an outside orthopedic specialist, Dr. Galleno, who informed prison officials that plaintiff's condition was fast degenerating. (Compl. p. 4) Plaintiff alleges that officials at Bedford Hills, including Dr. Griffin, failed to provide the therapy and medication prescribed by Dr. Galleno, which resulted in disc degeneration in her back, ultimately requiring surgery. (Compl. p. 4) Plaintiff claims she was taken for therapy only twice, and officials ignored the therapist's prescribed treatment. (Compl. p. 4) In addition, she alleges that officials at Bedford Hills failed to arrange for a consultation with a doctor for a second opinion when surgery was finally scheduled. (Compl. p. 4) Plaintiff claims that when officials at Bedford Hills did eventually provide her with a second opinion and physical therapy, they failed to provide the medical records necessary for effective treatment. (Compl. p. 5) Finally, plaintiff asserts that Dr. Fernandez, Medical Director at Albion, denied plaintiff a medical exam upon her arrival at Albion, while at the same time removing the restriction that she not engage in heavy lifting. (Compl. p. 6) Plaintiff alleges that Dr. Fernandez refused to provide the medication and therapy prescribed by specialists or reschedule surgery. (Compl. p. 6)

**II. Discussion**

Defendants move to dismiss on the ground that plaintiff failed to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A court will only grant a 12(b)(6) motion when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a 12(b)(6) motion, a court "must accept as true all the factual allegations in the complaint

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 391143 (S.D.N.Y.)
(Cite as: 1998 WL 391143 (S.D.N.Y.))

and must draw all reasonable inferences in favor of the plaintiff." *Hamilton Chapter of Alpha Delta Phi v. Hamilton College,* 128 F.3d 59, 63 (2d Cir.1997). The court will liberally construe the Complaint of a *pro se* litigant. *See Graziano v. U.S.,* 83 F.3d 587, 589 (2d Cir.1996).

### A. The Eleventh Amendment

The defendants argue that this Court lacks subject matter jurisdiction because the plaintiff is suing New York and the Eleventh Amendment bars suits against a state in federal court. The Eleventh Amendment of the Constitution states that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment bars a suit against a state by one of its citizens absent a waiver of immunity by the state. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Immunity under the Eleventh Amendment applies to actions against state officials who are sued in their official capacity where the state is the real party in interest. *See Farid v. Smith,* 850 F.2d 917, 921 (2d Cir .1988). Thus, suits for monetary damages against state officials in their official capacity are barred under the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir .1993). *Dube v. State University of New York,* 900 F.2d 587, 595 (2d Cir.1990).

*\*3* With respect to § 1983 actions, the Supreme Court has ruled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, in *Hafer v. Melo,* 502 U.S. 21, 30-31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) the Supreme Court held that state officials can be sued in their individual capacity under § 1983, and reaffirmed that the Eleventh Amendment does not protect state officials accused of depriving an individual of federal rights under the color of state law. Additionally, when a defendant is being sued in an official capacity for alleged constitutional violations, a federal court may award prospective injunctive relief that governs an official's

future conduct. *See Edelman v. Jordan,* 415 U.S. 651, 663-64, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Plaintiff is suing defendants in their official and individual capacity. Since plaintiff is seeking monetary damages rather than injunctive relief, the claims against defendants in their official capacity must be dismissed under the Eleventh Amendment. However, defendants have no Eleventh Amendment immunity with respect to claims brought against them in their individual capacity. *See Ying Jing Gan,* 996 F.2d at 529. Therefore, the Eleventh Amendment does not prohibit plaintiff from pursuing her § 1983 claims against all the defendants individually.

### B. The Eighth Amendment

The defendants assert that the plaintiff fails to state a valid claim under the Eighth Amendment. In order to establish a violation of the Eighth Amendment, plaintiff must demonstrate that defendants acted with deliberate indifference to her serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, a serious deprivation must occur and defendants must act with "a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). In my first opinion, I ruled that plaintiff had alleged a sufficiently serious deprivation of medical needs pertaining to her back condition. *See Thomas v. Coombe,* 1998 WL 20000 at *2 (S.D.N.Y. Jan.20, 1998). Thus, the only new issue raised by the defendants is whether plaintiff alleged facts that could lead to a conclusion that the prison guards at Bedford Hills as well as Dr. Fernandez and Tom Parise acted with deliberate indifference.[FN6]

> FN6. Dr. Griffin, the Director of the Medical Department at Bedford Hills featured prominently in the plaintiff's Complaint, does not raise any novel arguments. I address the validity of the claims against defendants Coombe, Lord and Krum in section II.D of the decision.

"[T]he deliberate indifference standard requires the plaintiff to prove that the prison officials knew of and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 391143 (S.D.N.Y.)
(Cite as: 1998 WL 391143 (S.D.N.Y.))

disregarded the plaintiffs serious medical needs." *See Chance v. Armstrong,* 143 F.3d 698, 1998 WL 228075 at *5 (2d Cir. May 7, 1998). In *Koehl v. Dalsheim,* the district court dismissed a *pro se* inmate's claim that prison officials unconstitutionally deprived him of his medically prescribed tinted eye-glasses and the medical attention he needed for his eye condition. 85 F.3d 86, 87 (2d Cir.1996). On appeal, the Second Circuit reversed the dismissal and concluded that the claim against the prison officials who confiscated the eye-glasses should proceed since plaintiff could potentially produce evidence that these officials were aware of the serious medical need for the eye-glasses. *Id.* at 88.

*4 Here, with the exception of Officer O'Conner, plaintiff repeatedly declares in her Complaint that she informed the prison guards of her medical condition and that she was in extreme pain. (Compl. pp. 2-6) Therefore, consistent with *Koehl,* I find that the plaintiff adequately states a claim that Sergeant Beckel, Officer Laba and Officer Irwin acted with deliberate indifference. Accordingly, I deny the motion to dismiss with respect to these defendants. Conversely, the plaintiff does not allege facts that could lead to the conclusion that Officer O'Conner had knowledge of her serious medical condition. Rather, she simply claims that Officer O'Conner was informed by Nurse Meyer that "plaintiff could still wear her work boot." (Compl. p. 4) That is not a sufficient basis to draw an inference of knowledge. Consequently, the motion to dismiss Officer O'Conner is granted.

The allegations against Dr. Fernandez and Tom Parise, however, adequately plead deliberate indifference to the plaintiffs medical needs. With respect to Dr. Fernandez, the plaintiff alleges that he refused to provide the medication and therapy prescribed by specialists, reschedule surgery and that he improperly removed the heavy lifting restriction. (Compl. p. 6) As to defendant Parise, the plaintiff claims that she informed him of her back condition and her inability to work, but was nonetheless told to continue her mess hall duties, including heavy lifting. (Compl. pp. 2-3) Given the alleged severity of plaintiff's back condition, the conduct engaged in, if true, permits the inference that Dr. Fernandez and Parise acted with deliberate indifference. *See, e.g., Chance,* 143 F.3d 698, 1998 WL 228075 at *5 (allegation that physician recommended unnecessary dental treatment

based on monetary incentives rather than medical considerations stated Eighth Amendment claim). Accordingly, the motion to dismiss is also denied with respect to Parise and Dr. Fernandez.

*C Qualified Immunity*

As a general matter, "the defense of qualified immunity cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983) (citation omitted).[FN7] There are two prongs to the qualified immunity defense. First, "[a] government official performing a discretionary function is entitled to qualified immunity provided his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citations and internal quotations omitted). Second, even where the law is clearly established an official will still be entitled to qualified immunity "if it was objectively reasonable for [the government actor] to believe that his actions were lawful at the time of the challenged act." *Doe v.. Marsh,* 105 F.3d 106, 109-10 (2d Cir.1997) (citations and internal quotations omitted).

> FN7. However, such a motion may be granted where the complaint itself establishes the circumstances required for a finding of qualified immunity. *Id.* at 1019. That is not the case in this instance.

*5 In the instant case, it is clearly established that inadequate medical care can give rise to an Eighth Amendment constitutional violation where prison officials are deliberately indifferent to an inmate's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). Sergeant Beckel, Officer Laba and Officer Irwin argue in conclusory fashion, nonetheless, that their actions were objectively reasonable since they were allegedly within DOCS regulations. The defendants, unfortunately, fail to specify in their papers the particular DOCS regulations that led to or authorized their conduct. Notwithstanding this omission, a dismissal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 391143 (S.D.N.Y.)
(Cite as: 1998 WL 391143 (S.D.N.Y.))

of the claims on the basis of qualified immunity would in any event be premature since I have held that sufficient allegations exist to support a claim that these prison guards were deliberately indifferent to the plaintiffs serious medical condition. *See Hathaway,* 37 F.3d at 69 ("Assuming that [defendant] was deliberately indifferent to [inmate's] serious medical needs, he is not entitled to qualified immunity because it would not be objectively reasonable for him to believe that his conduct did not violate [the inmate's] rights."). Consequently, the motion to dismiss on the basis of qualified immunity is denied.

*D. Personal Involvement under § 1983*

With respect to defendants Coombe, Lord and Krum, the Attorney General argues that they lack the requisite personal involvement to be liable under 42 U.S.C. § 1983, which provides a cause of action for damages against an individual who deprives another person of her constitutional rights under the color of state law. In order to prevail in a § 1983 claim for damages, defendants must have personal involvement in the alleged deprivation of an individual's constitutional rights. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Liability under § 1983 may not be based on the doctrine of respondent superior or vicarious liability. *See Godson v. Goord,* 1997 WL 714878, at *9 (S.D.N.Y. Nov.17,1997); *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Personal involvement may exist where a defendant: (1) directly participates in the alleged events; (2) fails to rectify a constitutional violation after learning of the situation; (3) creates or allows to continue a policy of unconstitutional practices; or (4) commits gross negligence in overseeing the subordinates responsible for the constitutional violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

Defendants Coombe, Lord, and Krum argue that they were not personally involved. Plaintiff does not make any specific factual allegations against Commissioner Coombe and Superintendent Lord beyond stating they failed to carry out their duties or rectify the violations once they became aware of them. (Compl. p. 1) It is not enough to allege that officials failed to carry out the duties of their office without defining these duties or how each defendant

failed to meet them. *See Beaman v. Coombe,* 1997 WL 538833, at *3 (S.D.N.Y. Aug.29, 1997). With respect to Nurse Krum, plaintiff alleges that the "supervising staff nurse was made aware of the problems [of staff] failing to follow protocols." (Compl. pp. 5-6) Plaintiff also alleges that Nurse Krum did not attempt to rectify the unconstitutional actions of the nursing staff. (Compl. p. 6) Further, plaintiff states that she "used the grievance committee and wrote letters to the supervising officials [complaining] of inadequate medical treatment," but does not name Coombe, Krum or Lord. (Compl. p. 6)

*6 I will assume that plaintiff wrote letters to defendants Coombe, Lord, and Krum because a court must liberally construe the complaint of a *pro se* litigant. However, the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement. *See Gayle v. Lucas,* 1998 WL 148416, at *4 (S.D.N.Y. Mar.30, 1998); *Higgins v. Coombe,* 1997 WL 328623, at *11 (S.D.N.Y. Jun.16, 1997). Furthermore, a plaintiff cannot bring a § 1983 claim against individuals based solely on their supervisory capacity or the fact that they held high positions of authority. *See Hernandez v. Artuz,* 1996 WL 631707, at *2 (S.D.N.Y. Oct.30, 1996); *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Therefore, the claims against Commissioner Coombe, Nurse Krum, and Superintendent Lord must be dismissed since none of the defendants were personally involved in the alleged constitutional violations.

*E. Transfer of Venue under § 1404(a)*

Dr. Fernandez, Director of Health Services at Albion, moves for a transfer of venue under 28 U.S.C. § 1404(a). As an initial matter, I am unclear as to where defendant wants this case transferred. The defendant elaborates at some length on how it would be more convenient to litigate the case in the Western District of New York, but concludes by asking this Court to transfer the case to the Northern District of New York.

Under § 1404(a), a district court "[f]or the convenience of parties and witnesses [and] in the interest of justice ... may transfer any civil action to any other district or division

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 391143 (S.D.N.Y.)
(Cite as: 1998 WL 391143 (S.D.N.Y.))

where it might have been brought." 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case based on notions of convenience and fairness. *See* In Re Cuyahoga Equipment Co., 980 F.2d 110, 117 (2d Cir.1992). A district court may consider several factors in deciding whether a § 1404 transfer would promote the interests of justice and the convenience of the parties and witnesses: (1) the existence of a forum selection clause; (2) the locus of events giving rise to the action; (3) convenience of the parties; (4) convenience of the witnesses; (5) relative ease of access to proof; (6) availability of process to compel witnesses to testify at trial; (7) weight accorded to the plaintiff's choice of forum; (8) forum's familiarity with the governing law; (9) trial efficiency; and (10) the interest of justice. *See* Ramada Franchise Systems, Inc. v. Cusack Develop., Inc., 1997 WL 304885, at *2 (S.D.N.Y. Jun.6, 1997). The moving party has the burden of establishing that these factors compel a change of forum. *Id.* Furthermore, a plaintiff's choice of forum is generally accorded substantial weight. *See* Brown v. Dow Corning Corp., 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996).

Dr. Fernandez's main argument for having the case severed and transferred is that venue in the Southern District of New York would severely inconvenience him and potential witnesses from Albion, who are based in Orleans County, located in the Western District of New York. Indeed, the location of witnesses is an important factor for a court to consider when deciding a transfer of venue motion. *See* 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128, 134 (S.D.N.Y.1994). However, plaintiff alleges that officials at Bedford Hills, as well as Dr. Fernandez at Albion, failed to provide treatment prescribed by specialists for her back condition. If the case was severed the medical testimony regarding plaintiff's back condition would have to be repeated at Dr. Fernandez's separate trial. Certain witnesses would potentially have to testify at two trials in two different locations. Furthermore, plaintiff is proceeding *pro se,* and severance would put the burden on her of preparing for two trials. Thus, severance and transfer of the case against Dr. Fernandez would neither promote trial efficiency, nor the interest of justice. The defendant fails to make an argument that overcomes the great weight to which plaintiff's choice of forum is entitled. *See* Clarkson v. Coughlin, 783 F.Supp. 789, 800 (S.D.N.Y.1992). Accordingly, the motion to sever the case and transfer

venue with respect to Dr. Fernandez is denied.

### III. Conclusion

**\*7** For the reasons discussed above, the motion to dismiss is GRANTED with respect to defendants Coombe, Lord, Krum and O'Conner. The motion is DENIED with respect to all other named defendants. The motion to sever the case and transfer the action against Dr. Fernandez is DENIED. The trial will begin on July 22, 1998 at 9:30 a .m.

### SO ORDERED

S.D.N.Y.,1998.
Thomas v. Coombe
Not Reported in F.Supp., 1998 WL 391143 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Efrain J. MUNIZ, Plaintiff,
v.
Glenn S. GOORD, et al., Defendants.
**No. 9:04-CV-0479.**

July 11, 2007.

Efrain J. Muniz, Gouverneur, NY, pro se.

Steven H. Schwartz, Esq., Assistant Attorney General, of Counsel, Hon. Andrew M. Cuomo, Attorney General for the State of New York, Albany, NY, for Defendants.

### *DECISION and ORDER*

THOMAS J. McAVOY, United States District Judge.

**\*1** This matter brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

No objections to the May 2, 2007 Report-Recommendation have been raised. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report-Recommendation for the reasons stated therein. It is, therefore, Ordered that:

(1) Defendants' motion for judgment on the pleadings is

DENIED;

(2) Plaintiff's claims under the Ninth Amendment is DISMISSED;

(3) Plaintiff's claims under the Fourteenth Amendment are DISMISSED; and

(4) The claims against Defendant Taylor are DISMISSED.

IT IS SO ORDERED.

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This action has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. § 636(b). Efrain J. Muniz ("Plaintiff") commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against three employees of the New York State Department of Correctional Services ("DOCS")-DOCS Commissioner Glenn S. Goord, DOCS Chief Medical Officer Dr. Lester Wright, and Gouverneur Correctional Facility ("Gouverneur C.F.") Superintendent Justin Taylor. (Dkt. No. 1.) Generally, Plaintiff alleges that Defendants violated his rights under the Eighth, Ninth and Fourteenth Amendments by denying him medical treatment for, and routine testing with regard to the progress of, his Hepatitis C medical condition because he refused, in or around October and November of 2003, to participate in the Residential Substance Abuse Treatment ("RSAT") Program at Gouverneur C.F. (*See generally* Dkt. No. 1 and Exs. A-D; Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) Currently before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkt. No. 27.) For the reasons that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

follow, I recommend that Defendants' motion be denied, but that Plaintiff's Ninth Amendment claim and Fourteenth Amendment claim should be *sua sponte* dismissed pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

## I. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." [FN1]

> FN1. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994) (citations omitted); *accord, Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief," [FN2] or the defendant must show that the plaintiff's claim "fails as a matter of law." [FN3] Thus, a defendant may base a Rule 12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); [FN4] or (2) a challenge to the legal cognizability of the claim. [FN5]

> FN2. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514

(2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

> FN3. *Phelps v. Kapnolis,* 308 F.3d 180, 187 (2d Cir.2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 108, n. 16 [1976].)

> FN4. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> FN5. *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

(2d Cir.2000) (distinguishing between a failure to meet Rule 12[b] [6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig .,* 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

**\*2** Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[FN6] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [FN7] The purpose of this rule is to "facilitate a proper decision on the merits."[FN8] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN9]

FN6. *See Swierkiewicz,* 534 U.S. at 511-512, 515.

FN7. *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at

47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U .S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

FN8. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) (quoting *Conley,* 355 U.S. at 48).

FN9. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." [FN10]

FN10. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003); *see, e.g., Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury,* 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 9:09-cv-00515-GLS-DEP   Document 30   Filed 04/06/10   Page 46 of 61

Page 4

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." [FN11] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[FN12] Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN13]

> FN11.*Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

> FN12.*Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

> FN13.*Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were

insufficient) (internal quotation and citation omitted).

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN14] However, "all normal rules of pleading are not absolutely suspended." [FN15] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN16]

> FN14.*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

> FN15.*Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) (citations omitted), *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

> FN16.*Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

Finally, as with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. [FN17] Having said that, it should be emphasized that, on a motion to dismiss, the court may, without converting the motion to dismiss into a motion for

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

summary judgment, consider (1) any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in their motion to dismiss),[FN18] and (2) any documents provided by the plaintiff in opposition to defendants' motion to dismiss, to the extent those documents are consistent with the allegations in the complaint.[FN19]

> FN17.*See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

> FN18.*See Chambers v. Time Warner,* 282 F.3d 147, 153 & n. 3 (2d Cir.2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss was appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.,* 263, F.3d 10, 13, n. 3 (2d Cir.2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med. Group v. Philip Morris Co., Inc.,* 75 F.3d 801, 808 (2d Cir.1996) (a document that is "intergral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases]; *Harsco Corp. v. Segui,* 91 F.3d 337, 341, n. 1 (2d Cir.1996) ("This letter, though cited to and described in the complaint, was not attached to the complaint. We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec Indus., Inc. v. Sum Holding LP,* 949 F.2d 42, 48 (2d Cir.1991) ("When plaintiff has actual notice of all the information in the movant's papers and has relied

upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991) ("We ... decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.") [citations omitted].

> FN19. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

## II. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

**\*3** Defendants argue that Plaintiff's action should be dismissed because his Complaint acknowledges that he failed to exhaust his available administrative remedies before filing suit in April of 2004. (Dkt. No. 27, Part 3.) Specifically, Defendants argue that Plaintiff's Complaint alleges that the "final result" of Plaintiff's Inmate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Grievance Complaint regarding the matters in question (i.e., Grievance No. GOV-10351/03) was that the Gouverneur C.F. Inmate Grievance Resolution Committee's ("IGRC's") denial of that grievance was, on appeal, affirmed by Defendant Taylor. (*Id.*) Defendants argue that, through this allegation, Plaintiff implicitly concedes that he subsequently failed to appeal Defendant Taylor's decision to DOCS' Central Office Review Committee ("CORC"), as required by the Prison Litigation Reform Act of 1996. (*Id.*) Finally, Defendants argue that, because Plaintiff had been (at the time in question) an inmate within DOCS for 26 years, it is inconceivable that he was unaware of his right to appeal to CORC (which fact was, incidentally, stated on the written decision issued by Defendant Taylor). (*Id.*)

Liberally construed, Plaintiff's response asserts what is, in essence, a four-prong argument. First, he argues, it would have been "fruitless" (or futile) to appeal to CORC since Defendant Wright's policy pre-determined the outcome of any grievance regarding prison officials' failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT (although Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT). (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) Second, Plaintiff argues, he was not able to appeal to CORC due to the fact that he was suffering from the effects of Hepatitis C. (*Id.* at ¶ 3.) Third, he argues, he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to the health effects of his Hepatitis C condition (even if that belief was, ultimately, mistaken). (*Id.* at ¶¶ 4-5.) Fourth, he argues, any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff, who is "a layman in matters of law." (*Id.* at ¶¶ 1, 4-5.)

Defendants' reply asserts two arguments. First, argue Defendants, Plaintiff's response should be disregarded because it was filed and served between 15 and 17 days late, in violation of Local Rule 7.1(b)(1), (the "return date" of Defendants' motion being December 11, 2006, the date of filing of Plaintiff's response being December 8, 2006, and the date of service of Plaintiff's response being December 11, 2006). (Dkt. No. 28, Part 1.) Second, argue Defendants, Plaintiff's implication that his poor health

precluded him from appealing Defendant Taylor's decision to CORC during the days following that decision (on November 26, 2003) is "disingenuous at best," given that Plaintiff's health was good enough for him to file a lengthy, coherent, and typed Complaint (complete with six exhibits) five months later, in April of 2004. (*Id.*)

**\*4** The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[FN20] DOCS has available a well-established three-step grievance program:

FN20.42 U.S.C. § 1997e.

First, an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.
*White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp.Codes R. & Regs. Tit. 7, § 701.7). Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[FN21]

FN21.*Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *See Hemphill v. State*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

*of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, the parties' arguments raise several issues falling under Parts 1 and 3 of the above-described three-part test.[FN22] I note that no issue appears to exist under Part 2 of that test since (1) Defendants have preserved their affirmative defense of non-exhaustion by raising it in their Answer (Dkt. No. 16, Part 1, ¶ 16), and (2) no allegation (or evidence) exists that any Defendant engaged in conduct that hindered or prevented Plaintiff from being able to appeal to CORC sufficient to estop that Defendant from raising this defense (*see* Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3 [arguing that it would have been "fruitless" to appeal to CORC, not that any Defendant took actions preventing Plaintiff from appealing to CORC] ).

> FN22. I reject Defendants' argument that the Court should disregard Plaintiff's response papers as late, because of (1) Defendants' failure to show prejudice as a result of the lateness, and (2) Plaintiff's special status as a *pro se* civil rights litigant (who was, during the time in which he was supposed to file his response papers, allegedly sick).

*5 The issue that falls under Part 1 of the above-described test is created by Plaintiff's argument that it would have been futile to appeal to CORC since Defendant Wright's

policy pre-determined the outcome of any grievance regarding prison officials' failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT. I reject this argument for two reasons. First, Plaintiff confuses a prisoner's *ability* to appeal to CORC with a prisoner's *chances of success* during such an appeal. Simply because a prisoner might not stand a realistic chance of success during an appeal does not mean that the administrative appellate process was not "available" to the prisoner. (If so, then any prisoner with an unmeritorious or frivolous claim would not have the administrative appellate process "available" to him.) Second, Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT. As a result, Plaintiff has alleged facts indicating that, in fact, it might not have been futile for him to appeal to CORC.

The issues that fall under Part 3 of the above-described test are created by Plaintiff's remaining three arguments-(1) that he was not physically able to appeal to CORC due to the fact that he was suffering from the effects of Hepatitis C, (2) that he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition (even if that belief was, ultimately, mistaken), and (3) that any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff.

Taking the arguments out of order, I reject the second argument for three reasons. First, the test in question is not whether Plaintiff "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition but whether he "reasonably" believed he was so excused (i.e., the test is an objective one, not a subjective one). Second, Plaintiff does not allege any facts whatsoever indicating why he "reasonably" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition. For example, Plaintiff does not allege any facts indicating that any New York State DOCS regulations were confusing.[FN23] Indeed, the regulation in question rather clearly provides that, if mitigating circumstances exist, a prisoner may request an exception to the time limit for filing an appeal to CORC (not that he be excused from having to file an appeal to CORC). *See*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006). Third, Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC? Simply stated, I can imagine no factual circumstances, consistent with the allegations of Plaintiff's Complaint (and his response papers), in which he reasonably believed that he was excused from having to appeal to CORC due to his Hepatitis C condition.

> FN23.See Giano v. Goord, 380 F.3d 670, 676, 678-679 & n. 9 (2d Cir.2004) (it was reasonable for plaintiff to have raised his complaints through disciplinary appeals process rather than by filing a separate grievance because the relevant DOCS regulations permitted such conduct or were confusing, for example, being misinterpreted by "a learned federal district court judge not long ago"); Hemphill v. New York Dep't of Corr. Servs., 380 F.3d 680, 690-691 (2d Cir.2004) (remanding to district court to determine, inter alia, whether the allegedly confusing nature of New York DOCS regulations justified plaintiff's failure to file a grievance in manner that DOCS officials now prescribe); Johnson v. Testman, 380 F.3d 691, 696-697 (2d Cir.2004) (remanding to district court to determine, inter alia, "whether ... the BOP grievance regulations were sufficiently confusing so that a prisoner like Johnson might reasonably have believed that he could raise his claim against Testman as part of his defense in disciplinary proceedings.").

*6 Moreover, I reject the third argument for two reasons. First, while special leniency might be sufficient to overcome a certain lack of specificity in a pleading and/or to excuse certain minor procedural mistakes, I am aware of no authority suggesting that it is sufficient to excuse a failure to comply with a federal statute such as the PLRA.[FN24] Second, special leniency is normally afforded pro se litigants because of their inexperience (or lack of

familiarity with legal procedures or terminology).[FN25] However, here, Plaintiff has some experience,[FN26] especially when it comes to court actions in which he is alleged to have not exhausted his available administrative remedies prior to filing suit.[FN27] Moreover, I note that Plaintiff's papers in this action have been fairly good-being organized and cogent, and often being typed, supported by exhibits, affidavits, and memorandum of law. (See Dkt. Nos. 1, 2, 19, 23.) Indeed, Plaintiff knew enough about court procedure to apply for and receive both an order dismissing the current proceeding without prejudice and an order reopening the proceeding. (See Dkt. Nos. 19, 22, 23, 26.) Clearly, Plaintiff is a litigant of at least some level of experience and sophistication.[FN28] While I do not believe that Plaintiff's experience is so extensive that it warrants altogether revoking the special status normally afforded pro se civil rights litigants,[FN29] I believe that his experience warrants somewhat diminishing his special status.[FN30] Moreover, I believe that this special leniency should be diminished as a sanction due to his apparent lack of candor with the Court. Specifically, Plaintiff apparently made a material misrepresentation to the Court in his Verified Complaint, wherein he made a sworn assertion that he had never "filed any other lawsuits in any state [or] federal court relating to [his] imprisonment" (Dkt. No. 1, ¶ 5[a] ), when, in fact, as of the date of the signing of his Complaint (April 28, 2004), Plaintiff had apparently done so.[FN31] Numerous cases exist from within the Third Circuit for sanctioning pro se litigants for abusing the litigation process, as well as some cases from within the Second Circuit.[FN32]

> FN24.See Houze v. Segarra, 217 F.Supp.2d 394, 395-396 (S.D.N.Y.2002) (dismissing prisoner's complaint for failure to exhaust administrative remedies, as required by PLRA, after acknowledging that prisoner, as pro se litigant, is afforded special leniency); see also Smith v. Keane, 96-CV-1629, 1998 U.S. Dist. LEXIS 3702, at *6, 9-18 (S.D.N.Y.1998) (dismissing prisoner's complaint for failure to comply with applicable statute of limitations, after acknowledging that prisoner, as pro se litigant, is afforded special leniency); Turner v. Johnson, 177 F.3d 390, 391-392 (5th Cir.1999) ("[N]either a party's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits [excusing the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

party's failure to comply with a statute of limitations].").

FN25. *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (affording special leniency to "a *pro se* litigant unfamiliar with the requirements of the legal system"); *Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986) (liberally construing *pro se* complaints benefits persons "unfamiliar with the lawyerlike method of pleading claims"); *Edwards v. Selsky,* 04-CV-1054, 2007 WL 748442, at *2-3 (N.D.N.Y. March 6, 2007) (M o r d u e ,  C . J . ,  a d o p t i n g Report-Recommendation of Lowe, M.J.) (stating that pro se litigants' "lack of [experience] is the reason for conferring the special status upon *pro se* litigants"); *see also Korsunskiv v. Gonzales,* 461 F.3d 847, 850 (7th Cir.2006); *Int'l Bus. Prop. v. ITT Sheraton Corp.,* 65 F.3d 175, at *2 (9th Cir.1995); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979); *Zaczek v. Fauquier County,* 764 F.Supp. 1071, 1078 (E.D.Va.1991); *Life Science Church v. U.S.,* 607 F.Supp. 1037, 1039 (N.D.Ohio 1985); John C. Rothermich, *Ethical and Procedural Implications of 'Ghostwriting' for Pro Se Litigants: Toward Increased Access to Civil Justice,* 67 FORDHAM L.REV. 2687, 2697 (Apr.1999) [citing cases].

FN26. Specifically, it appears that Plaintiff has filed between two and eight state court actions or appeals. *See, infra,* note 31 of this Report-Recommendation.

FN27. *Muniz v. David,* No. 96428, Memorandum and Order at 2 (N.Y.App.Div., 3d Dept., March 24, 2005) (indicating that defendants in that action had argued before the trial court, at some point before the issuance of its judgment on June 4, 2004, that Plaintiff had "failed to exhaust the administrative remedies through the available grievance procedures or establish any exceptions thereto").

FN28. When assessing a *pro se* litigant's

experience for purposes of deciding whether or not to revoke his special status, courts sometimes examine things such as (1) the quality of his pleadings (e .g., whether they are typed, crafted in accordance with the relevant rules of civil procedure, etc.), (2) the cogency of his motion papers (e.g., whether they are supported by applicable legal authorities, filed in accordance with court rules, etc.), and (3) the ultimate success of any motions, actions or appeals he has previously filed (or the failure of any motions he has previously opposed). *See, e.g., Edwards,* 2007 WL 748442, at *3; *Rolle v. Garcia,* 04-CV-0312, 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.), adopting Report-Recommendation, 2007 WL 672679, at *4 (N.D.N.Y. Feb. 28, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04-CV-1311, 2007 WL 951447, at *3-4 (N.D.N.Y. Feb. 12, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *2 & n. 11 (N.D.N.Y. Oct. 18, 2 0 0 6 )  ( H u r d ,  J . ,  a d o p t i n g Report-Recommendation of Lowe, M.J.); *see also Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993); *Ab v. Sekendur,* 03-CV-4723, 2004 WL 2434220, at *5 (N.D.Ill. Sept. 28, 2004). Such a practice seems appropriate in that it is consistent with the standard often used by courts to decide whether or not to appoint counsel to a *pro se* litigant. *See, e.g., Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986); *see also Tabron v. Grace,* 6 F.3d 147, 155-156 (3d Cir.1993); *Farmer,* 990 F.2d at 322; *Terrell v. Brewer,* 935 F.2d 1015, 1017 (9th Cir.1991); *Long v. Shillinger,* 927 F.2d 525, 527 (10th Cir.1991).

FN29. *See, e.g., Johnson v. Eggersdorf,* 8 Fed. App'x 140, 143 (2 d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n. 1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); *Gill v. Pidylpchak,* 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY,* 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean,* 204 F.R.D. 251, 257 & n. 5 (S.D.N.Y.2001); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000); *McGann v. U.S.,* 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta,* 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

FN30. My review of the applicable law suggests that courts need not treat special status as an "all or nothing" benefit but may confer special status to a semi-experienced *pro se* litigant on a "sliding scale," treating the litigant more leniently than represented litigants but not as leniently as wholly inexperienced *pro se* litigants. *See, e.g., Kilkenny v. Greenberg Traurig, LLP,* 05-CV-6578, 2006 23399, at *18 (S.D.N.Y. Apr. 26, 2006) ("While plaintiff's *pro se* status does not insulate him from the imposition of sanctions under Rule 11 ..., *pro se* litigants are held to a more lenient standard, and the application of Rule 11 may be determined on a sliding scale according to the litigant's level of sophistication.") [citations and internal quotation marks omitted]; *Holsey v. Bass,* 519 F.Supp. 395, 407 n. 27 (D.Md.1981) ("This Court is of the opinion that it is proper to apply a sliding scale of liberality in construing a *pro se* complaint.") [citation omitted]; *see also* Julie M. Bradlow, *Procedural Due Process Rights of Pro se Civil Litigants,* 55 U. CHI. L.REV.. 659, 660 (Spring 1988) (asserting that, in *pro se* civil litigation, a "sliding scale" of due process should

be employed by judges to ensure that they give "such leniency and special attention as the particular case merits").

FN31. *See, e.g., Efraim Muniz v. David,* No. 96428, Memorandum and Order (N.Y.App.Div., 3d Dept., March 24, 2005) (stating, "This proceeding was commenced in October 2003"). I note that the plaintiff in the aforementioned prisoner action-"Efraim Muniz" of Governor C.F.-bears the same name of record as the prisoner of record bearing New York State DOCS Inmate Number 80-A-0959, the inmate number claimed by Plaintiff in the current action. I note also that, according to the New York DOCS Inmate Locator System, no other prisoner in the New York State DOCS has ever been named "Efraim Muniz." In other words, either the DOCS Inmate Locator System contains a typographical error for Plaintiff's record entry or Plaintiff answers to both names.

Finally, I note that it is unclear whether several other prisoner actions and appeals were also brought by Plaintiff or the one other "Efrain Muniz" who has ever been incarcerated by the New York State DOCS. *See, e.g., Efrain J. Muniz v. N.Y.S. Div. of Parole,* 695 N.Y.S.2d 619 (N.Y.App.Div., 3d Dept., 1999); *Efrain Muniz v. Selsky,* No. 91967, Memorandum and Judgment (N.Y.App.Div., 3d Dept., Jan. 9, 2003); *Efrain J. Muniz v. Goord,* 820 N.Y.S.2d 368 (N.Y.App.Div., 3d Dept., 2006).

FN32. *See, e.g., Iwachiw v. N.Y.S. Dept. of Motor Veh.,* 396 F.3d at 528-529 & n. 1 (2d Cir.2005); *McDonald v. Head Crim. Ct. Supervis. Officer,* 850 F.2d 121, 124-125 (2d Cir.1988); *Mora v. Bockelmann,* 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); *Mitchell v. Harriman,* 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); *Tibbetts v. Robinson,* 97-CV-2682, 2005 WL 2146079, at *7 (D.Conn.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Aug. 31, 2005).

Finally, I am skeptical of the first arguments for two reasons. First, Plaintiff does not allege specific facts indicating why he was not able (presumably, physically able) to file an appeal to CORC during the days or weeks following November 26, 2003. (For example, was it because he did not have the strength to think clearly or write, or was it because he did not have access to paper and legal materials for some reason? Was he housed in the prison's infirmary during this time period, and how long was he allegedly incapacitated?) I note that Plaintiff's allegation that he was unable to file an appeal to CORC during the days or weeks following November 26, 2003, appears undermined somewhat by Exhibit C to his Complaint, which indicates that, on January 12, 2004 (approximately six weeks after November 26, 2003), Plaintiff was in a good enough physical condition to write a letter to a DOCS official (apparently Brenda Tracy, a Nurse Administrator), regarding a doctor's decision to not prescribe vitamins for Plaintiff. (Dkt. No. 1, Ex. C.) FN33 Second, Plaintiff does not allege facts indicating why he did not, or was not able to, request an exception to the time limit for filing an appeal to CORC due to the "mitigating circumstances" created by his illness (and then, if necessary, file a separate grievance regarding any denial of that request for an exception). *See* DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006).

> FN33. However, I am not persuaded by Defendants' argument that Plaintiff must have been physically able to file an appeal to CORC during the days or weeks following November 26, 2003, because Plaintiff was able to file his Complaint in this action approximately five months later, in April of 2004. Setting aside the issue of whether the Court's consideration of such a fact would arguably necessitate converting Defendants' motion into a motion for summary judgment, I note the lengthy time lag between the two dates.

*7 However, despite this skepticism about Plaintiff's first argument, I am reluctant to recommend dismissal of Plaintiff's Complaint based on a failure to exhaust his administrative remedies. Specifically, I am mindful of how low the pleading standard is under Rules 8 and 12 of the Federal Rules of Civil Procedure and various Supreme Court precedents. *See, supra,* Part I of this Report-Recommendation. Morever, I am mindful that, within the Second Circuit, "it may often be premature to decide the issue of exhaustion in the context of a motion to dismiss the complaint under Rule 12(b)(6); rather it may be necessary for the Court to address the issue at the summary judgment stage." *Flynn v. Wright,* 05-CV-1488, 2007 WL 241332, at *12 (S.D.N.Y. Jan. 26, 2007) (citing *Ziemba v. Wezner,* 366 F.3d 161, 163-164 [2d Cir.2004] [vacating magistrate judge's granting of defendants' motion for judgment on pleadings for failing to exhaust administrative remedies] ).FN34 Finally, I am mindful that, recently, the Supreme Court expressed disapproval of dismissing prisoner actions for failure to exhaust administrative remedies under a Rule 12(b)(6) analysis. *See Jones v. Block,* 127 S.Ct. 910, 919-923 (2007).

> FN34. *Accord, Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *8 (S.D.N.Y. Dec. 6, 2006).

More specifically, I find that Plaintiff's assertions, in his response papers, FN35 that, in light of his Hepatitis C condition, he "did the very best [his] ability and health allowed [him] at the time" to grieve the matters at issue in this action "plausibly alleges" the existence of "special circumstances" justifying his failure to appeal to CORC (as permitted by *Hemphill v. State of New York,* 380 F.3d 680 [2d Cir.2004] and its companion cases), and meets-albeit *barely*-the "modest" pleading threshold set by Rules 8 and 12 of the Federal Rules of Civil Procedure and Supreme Court precedent such as *Jones v. Block,* 127 S.Ct. 910 (2007), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), and *Leatherman v. Tarrant County Narc. and Intell. Coord. Unit,* 507 U.S. 163 (1993). I note that at least one analogous case exists, from within the Second Circuit, in which a prisoner was found to have plausibly alleged special circumstances due to physical incapacitation. FN36

> FN35. "Generally, a court may not look outside

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. See *Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

FN36.*See Barad v. Comstock,* 03-CV-0736, 2005 U.S. Dist. LEXIS 38418, at *10-11, 16-17, 21-23 (W.D.N.Y. June 30, 2005) (prisoner plausibly alleged special circumstances where he alleged, in part, that time to commence grievance had lapsed while he had been hospitalized due to kidney stones, although his complaint was ultimately dismissed under a summary judgment analysis); *cf. Bonilla v. Janovick,* 01-CV-3988, 2005 U.S. Dist. LEXIS 325, at *6-7 (E.D.N.Y. Jan. 7, 2005) ("[P]laintiff's hospitalization and physical injuries may have prevented the filing of an administrative complaint, [necessitating] further discovery and additional depositions ... to determine whether the admitted failure to exhaust should nevertheless be excused [due to the 'special circumstances' exception]."

As a result, I recommend that the Court deny Defendants' motion for judgment on the pleadings. However, I express no opinion about whether Plaintiff would or would not be able to survive a motion for *summary judgment* (premised on a failure to exhaust administrative remedies), should Defendants choose to file such a motion.[FN37]

FN37.*See Barad,* 2005 U.S. Dist. LEXIS 38418, at *21, 22, 25 (during summary judgment analysis, accepting defendants' argument that plaintiff "was physically able to file a grievance" during his fourteen-day hospitalization due to kidney stones because "plaintiff testified that he was able to write [and attend a program] during his hospitalization," although ultimately finding that plaintiff had established other special circumstances, i.e., [1] that the correctional facility's medical staff had erroneously told plaintiff that his time to commence a grievance had lapsed, and [2] that plaintiff had relied on Second Circuit law at that time [in 1999] which did not require exhaustion of administrative remedies for such deliberate indifference claims); *cf. Goldenberg v. St. Barnabas Hosp.,* 01-CV-7435, 2005 U.S. Dist. LEXIS 2730, at *11-16 (S.D.N.Y. Feb. 22, 2005) (granting defendants' motion for summary judgment, in part because plaintiff adduced no evidence in support of his claim that administrative remedies were not "available" to him [i.e., during an analysis of Part 1 of the Second Circuit's three-part test] insofar as he was, during the relevant time period, in a physically and mentally debilitated state).

**B. Duty of Court to *Sua Sponte* Analyze Pleading Sufficiency of Claims**

An analysis of Defendants' failure-to-exhaust argument does not end the Court's review of Plaintiff's claims. This is because, under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure, the Court has the authority (and duty) to *sua sponte* dismiss prisoner claims that fail to state a claim upon which relief may be granted or over which the Court lacks subject-matter jurisdiction. As a result, I will analyze

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Plaintiff's Eight, Ninth and Fourteenth Amendment claims for such defects.

## 1. Failure to State a Claim Under the Eighth Amendment

**\*8** Generally, to state a claim of inadequate medical care under the Eighth Amendment, Plaintiff must allege facts indicating two things: (1) that he had a sufficiently serious medical need; and (2) that Defendants were deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). With regard to the second element, an official is "deliberately indifferent" (in other words, he has a sufficiently culpable state of mind) when he " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 [1994] ).

Here, I will assume for the sake of argument that Plaintiff's Hepatitis C condition constitutes a "serious medical need" for purposes of the Eighth Amendment.[FN38] The more problematic question is whether Plaintiff has alleged facts indicating the sort of culpable state of mind (which is akin to criminal recklessness) necessary for liability under the Eighth Amendment. [FN39] It is arguable that he has simply alleged facts indicating a disagreement with his prescribed medical care, or perhaps negligence, neither of which is enough to make a defendant liable to a plaintiff under the Eighth Amendment.[FN40] For example, the documents relied on and/or referenced in Plaintiff's Complaint (and thus deemed part of Plaintiff's Complaint) *appear* to suggest that, at the time that Plaintiff was denied medical treatment for Hepatitis C, it was not deemed medically appropriate for Plaintiff to engage in such medical treatment without having first enrolled in the RSAT Program, due to the increased risk of liver damage.[FN41] If those documents more clearly indicated a medical rationale for the requirement that Plaintiff participate in the RSAT Program, I would be inclined to conclude that Plaintiff has not alleged facts indicating a violation of the Eighth Amendment.[FN42] However, they do not do so. Moreover,

again, I am mindful of how low the pleading standard is under Rules 8 and 12 of the Federal Rules of Civil Procedure. I am also mindful that, unlike many cases brought by prisoners, Plaintiff alleges not only a denial of treatment for Hepatitis C but of *testing* for the progress of that disease (which denial appears to be more difficult to justify under the rationale apparently proffered in Exhibits A2 and D to Plaintiff's Complaint).

FN38. Some district court decisions from within the Second Circuit have found Hepatitis C to not constitute a serious medical need. *See Vondette v. McDonald,* 00-CV-6874, 2001 WL 1551152, at \*4-5 (S.D.N.Y. Dec. 5, 2001). However, it appears that the bulk of district court decisions addressing the issue finds that Hepatitis C is a serious medical need. *See Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at \*6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at \*10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at \*6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at \*9 (S.D.N.Y. June 13, 2000).

FN39. " 'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness], is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.' " *Evering v. Rielly,* 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at \*30 (S.D.N.Y. Sept. 28, 2001) (quoting *Hemmings v. Gorczyk,* 134 F.3d 104, 108 [2d Cir.1998] ).

FN40.*See Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

malpractice does not become a constitutional violation merely because the victim is a prisoner."); Chance, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

FN41. (See Dkt. No. 1, Ex. A2 ["[T]he facility is acting in accordance with direction provided by Central Office. The policy regarding Hepatitis C Treatment/Substance Abuse Treatment is addressed in a memorandum dated January 8, 2002, which states in part: 'Any inmate who is diagnosed with Hepatitis C and requires medical treatment must have completed or have enrolled in an Alcohol Substance Abuse Treatment, Comprehensive Alcohol Substance Abuse Treatment, Resident Substance Abuse Treatment, or Pre-Treatment Workbook Program ...."]; Dkt. No. 1, Ex. D ["While to the general public hepatitis is simply a disease, the medical community views it more accurately as an inflamed liver.... Most new [Hepatitis C] infections are caused by intravenous drug use. Disease progression can ... occur more often if the person drinks alcohol."].)

FN42. See Richards v. Goord, 04-CV-1433, 2007 WL 201109, at *13-15 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (finding that prisoner's Eighth Amendment claim regarding denial of hepatitis treatment based on his non-participation in ASAT program should be dismissed on alternative ground that he failed to state a claim, given that the documents attached to prisoner's complaint and response papers clearly indicated that, at the time, it was not deemed medically appropriate for the plaintiff to engage in medical treatment for Hepatitis C without having first enrolled in the ASAT Program).

As a result, I am unable to conclude, without briefing by

Defendants, that Plaintiff has failed to state an Eighth Amendment claim under the circumstances.[FN43] However, again, I express no opinion about whether Plaintiff would or would not be able to survive a motion for summary judgment (with respect to his Eighth Amendment claim), should Defendants choose to file such a motion. See Lewis v. Alves, 01-CV-0640, 2004 WL 941532, at *5-7 (W.D.N.Y. March 22, 2004) (granting defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim alleging, inter alia, deliberate indifference to plaintiff's Hepatitis C condition due to his non-participation in an ASAT Program), accord, Rose v. Alves, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); cf. Graham v. Wright, 01-CV-9613, 2003 U.S. Dist. LEXIS 16106, at *6 n. 5 (S.D.N.Y. Sept. 12, 2003) ("[W]e note that the portions of the [DOCS] Guidelines challenged by plaintiff, namely that the inmate must successfully complete an ASAT program ... [before he receives treatment for Hepatitis C] appear to be highly rational in light of the fact that severe side effects, including death, may result from treatment of the patient with interferon-apha-2b or 2a combined with ribavirin for 6-12 months, and that active substance abuse, including alcohol abuse, can cause life threatening consequences to a patient following the treatment regimen.").

FN43. See McKenna v. Wright, 386 F.3d 432, 434, 437 (2d. Cir.2004) ( prisoner stated Eighth Amendment claim for deliberate indifference to his Hepatitis C based on his non-participation in ASAT program where he alleged that he had been deemed "ineligible for the [ASAT] program because of his medical condition"); Hatzfield v. Goord, 04-CV-0159, 2007 WL 700961, at *1-5 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.) ( prisoner stated First, Eighth and Fourteenth Amendment claims with regard to defendants' failure to treat his Hepatitis C condition based on his non-participation in RSAT/ASAT program where he alleged that his participation in the RSAT/ASAT program would have violated his religious beliefs); Hilton v. Wright, 235 F.R.D. 40, 44-55 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) (assuming, without specifically deciding, that class of prisoners had stated a viable Section 1983 claim regarding

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

>**DOCS' policy** of requiring **prisoners'** participation in ASAT/RSAT program before **prisoners** could receive treatment for **Hepatitis** C).

**2. Failure to State a Claim Under the Ninth Amendment**

**\*9** In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia,* the Ninth Amendment. (Dkt. No. 1, ¶ 7.3.) The Ninth Amendment to the United States Constitution provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. I can find no factual allegations in Plaintiff's Complaint in support of his Ninth Amendment claim. (*See generally* Dkt. Nos. 1, 29.) Moreover, I can imagine no set of factual circumstances, consistent with the allegations of Plaintiff's Complaint, in which such a Ninth Amendment claim might exist. (*Id.*) As explained by the Tenth Circuit:

>Although the Ninth Amendment may restrict the activities of state actors ..., it has never been applied to prevent the denial of medical treatment to prisoners. Indeed, such an application would be inappropriate, since the Ninth Amendment only protects those rights not otherwise 'enumerat[ed] in the Constitution,' ... and the Eighth Amendment specifically addresses itself to the mistreatment of prisoners ....

*Parnisi v. Colo. State Hosp.,* No. 92-1368, 1993 U.S.App. LEXIS 9128, at \*2, 4-5 (10th Cir. Apr. 15, 1993) (affirming district court's dismissal of prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment) [citations omitted].[FN44] Courts from within the Second Circuit have similarly recognized the inapplicability of the Ninth Amendment to prisoner Section 1983 claims. *See, e.g., Diaz v. City of New York,* 00-CV-2944, 2006 U .S. Dist. LEXIS 93923, at \*21-22 (E.D.N.Y. Dec. 29, 2006) ("[T]he Ninth Amendment is a rule of construction, not one that protects any specific right, and so no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action.") [internal

quotation marks and citations omitted], *accord, Bussey v. Phillips,* 419 F.Supp.2d 569, 586 (S.D.N.Y.2006) [citing case].

FN44.*See also Taylor v. Roper,* 83 F. App'x 142, 143 (8th Cir.2003) ("We also agree with the district court that [the prisoner's] allegations [regarding inadequate medical care] provided no basis for his claims ... under ... the Ninth Amendment ...."); *Gaberhart v. Chapleau,* No. 96-5050, 1997 U.S.App. LEXIS 6617, at \*3 (6th Cir. Apr. 4, 1997) (dismissing the prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment, in part because he "never explained the theory or at least the basis" for that claim).

The closest that Plaintiff comes to stating such a Ninth Amendment claim is when he alleges that prisoners are being "denied mental health services for Hapatitis C[-]related mental *disturbances* and anxiety," and that their "confidentiality is being violated." (Dkt. No. 1, "Third Cause of Action." [emphasis in original].) Granted, the Ninth Amendment may, in some circumstances, protect the disclosure of some personal information about a prisoner (e.g., regarding the prisoner's mental health). *See Morgan v. Rowland,* 01-CV-1107, 2006 U.S. Dist. LEXIS 11081, at \*28-30 (D.Conn. March 17, 2006) (granting defendants' motion for summary judgment with regard to such a claim); *see also Hunnictt v.. Armstrong,* 152 F. App'x 34 (2d Cir.2005) (unpublished decision), *vacating in part,* 305 F.Supp.2d 175, 187-188 (D.Conn.2004) (presuming that prisoner was not alleging Ninth Amendment right-to-privacy claim).[FN45] However, again, Plaintiff asserts no factual allegations in support of this claim. For example, Plaintiff does not allege any facts indicating that Defendants discussed Plaintiff's private or personal mental health issues in front of other prisoners and DOCS employees, violating either the psychiatrist-patient privilege or psychologist-patient privilege. (*See generally* Dkt. Nos. 1, 29.) Furthermore, Plaintiff's request to litigate this matter as a class action was denied; thus, it is not relevant, *for purposes of this action,* what wrongs *other* prisoners (especially unidentified prisoners) are allegedly experiencing.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

FN45.*But see In re State Police Litig.,* 888 F.Supp. 1235, 1258 (D.Conn.1995) ("[T]he [Ninth] [A]mendment does not guarantee any constitutional right [e.g., to privacy] sufficient to support a claim under 42 U.S.C. § 1983.") [citations omitted], *appeal dismissed,*88 F.3d 127 (2d Cir.1996); *accord, Salaman v. Bullock,* 05-CV-0876, 2007 U.S. Dist. LEXIS 24432, at *8 (D.Conn. March 15, 2007), *DeLeon v. Little,* 981 F.Supp. 728, 734 (D.Conn.1997), *Doe v. Episcopal Soc. Servs.,* 94-CV-9171, 1996 U.S. Dist. LEXIS 1278, at *3-4 (S.D.N.Y. Feb. 7, 1996).

*10 As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Ninth Amendment claim. However, because the defect in any right-to-privacy claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such right-to-privacy claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable Ninth Amendment claim within 30 days of the Court's final decision on Defendants' motion.

**3. Failure to State a Claim Under the Fourteenth Amendment**

In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia,* the Fourteenth Amendment. (Dkt. No. 1, ¶ 7.3.) Assuming that Plaintiff is not simply relying on the Fourteenth Amendment to the extent that it makes the Eighth Amendment applicable to the states, the only conceivable claims to which Plaintiff might be referring are his claims for a violation of his right to substantive due process, procedural due process, or equal protection. However, I can find no factual allegations in support of any such claims.

Specifically, to the extent that Plaintiff is attempting to assert some sort of due process claim, any such claim is in actuality an Eighth Amendment claim, which I have already analyzed above in Part II.B.1. of this Report-Recommendation. *See Hatzfield v. Goord,* 04-CV-0159, 2007 WL 700961, at *1 n. 3 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting

Report-Recommendation of Homer, M.J.) (citing *Pabon v. Wright,* 459 F.3d 241, 253 [2d Cir.2006] ); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *9 (S.D.N.Y. March 4, 2002).

To the extent that Plaintiff is attempting to assert some sort of equal protection claim, he has not alleged facts indicating that either (1) he was treated differently than other people in similar circumstances or (2) the unequal treatment was the result of intentional and purposeful discrimination. *See, e.g., Verley,* 2004 WL 526740, at *20-21;*McKenna,* 2002 WL 338375, at *10-12. Furthermore, to the extent that Plaintiff is somehow implicitly alleging that he was treated differently than persons suffering from cancer or AIDS, I note that, as stated earlier, the exhibits to Plaintiff's own Complaint appear to suggest that, at the time that Plaintiff was denied medical treatment for Hepatitis C, he was being denied such treatment because of the possible damage such treatment would do to his liver (which was already being affected by Hepatitis C) if he was currently abusing alcohol or drugs. FN46

FN46. *See, supra,* note 41 of this Report-Recommendation.

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Fourteenth Amendment claim. However, because the defect in any equal protection claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such equal protection claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable equal protection claim within 30 days of the Court's final decision on Defendants' motion.

**4. Lack of Personal Involvement**

*11 " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).FN47 In order to prevail on a cause of action under 42 U.S.C. § 1983 against an

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN48] If the defendant is a supervisory official, such as a DOCS Commissioner or correctional facility superintendent, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN49] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN50] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN51]

> FN47.*Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087 (1978).

> FN48.*See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

> FN49.*Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

> FN50.*Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

> FN51.*Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) [citations omitted].

Here, liberally construed, Plaintiff's Complaint alleges that

Defendant Goord (the DOCS Commissioner) and Defendant Wright (the DOCS Chief Medical Officer) approved and allowed the current policy of forced participation in RSAT prior to receiving treatment for Hepatitis C. (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.) More specifically, Plaintiff has alleged that Defendants Goord and Wright created an unconstitutional policy, or at least knowingly allowed such a policy to continue. (*Id.*) For these reasons, I am unable to conclude, without briefing by Defendants, that Plaintiff has failed to allege facts indicating the personal involvement of Defendants Goord and Wright in the constitutional violation(s) alleged. *See, e.g., Hatzfield,* 2007 WL 700961, at *3.

However, the same cannot be said of Plaintiff's allegations against Defendant Taylor. Plaintiff alleges that Defendant Taylor (the Gouverneur C.F. Superintendent) violated his constitutional rights when he affirmed the IGRC's denial of Plaintiff's grievance and upheld the policy of forced participation in RSAT before receiving treatment for Hepatitis C. (Dkt. No. 1, ¶ 4.b. & Exs. A, A1, A2.) Two problems exist with regard to Plaintiff's claim(s) against Defendant Taylor.

First, the documents attached to Plaintiff's Complaint (and thus incorporated into that Complaint, *see* Fed.R.Civ.P. 10[c] ) indicate that it was not Defendant Justin Taylor but someone else (either a deputy superintendent or an acting superintendent) who personally affirmed the IGRC's denial of Plaintiff's grievance. (Dkt. No. 1, Ex. A.2.) It is well-established that when a "supervisory official like [a] ... prison [s]uperintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable." *Walker v. Pataro,* 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002), *accord, Hatzfield,* 2007 WL 700961, at *3; *Ramos v. Artuz,* 00-CV-0149, 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001). "Thus, receipt of the grievance alone, without more, cannot suffice to allege personal involvement." *Hatzfield,* 2007 WL 700961, at *3.

*12 Second, even if Defendant Taylor had personally affirmed the IGRC's decision, a fair reading of the Complaint reveals that Plaintiff is alleging that the policy

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

of denying medical treatment for Hepatitis C was DOCS-wide rather than Gouverneur C.F.-specific. (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.) "There can be, therefore, no claim that [the superintendent] either created the policy [denying medical treatment for Hepatitis C] or allowed it to continue as there is no allegation that he had the power to create or to terminate the policy." Hatzfield, 2007 WL 700961, at *3; see also Verley v. Goord, 02-CV-1182, 2004 WL 526740, at *15-16 (S.D.N.Y. Jan. 23, 2004) (dismissing similar claims against prison superintendent based on failure to allege facts indicating personal involvement).

The closest Plaintiff comes to involving Defendant Taylor in the constitutional violations alleged is when Plaintiff alleges not simply a denial of medical *treatment* for his Hepatitis C condition but a denial of routine *testing* with regard to the progression of his Hepatitis C condition. Specifically, Plaintiff alleges that "routine testing" of Hepatitis C in "numerous inmates" is not being conducted by "medical staff" at Gouvernuer C.F. (Dkt. No. 1, ¶ 6[c].) The problem is that this claim of a denial-of-testing was not raised in the grievance that Plaintiff appealed to Defendant Taylor. (Dkt. No. 1, Ex. A.) Thus, there are no factual allegations indicating that Defendant Taylor either knew of the practice in question or that he allowed it to continue. However, it is conceivable to me that Plaintiff *might* be able to assert such factual allegations. *See, e.g. Johnson v. Wright,* 234 F.Supp.2d 352, 364 (S.D.N.Y.2002).

As a result, I recommend that Plaintiff's claims against Defendant Taylor should be dismissed *sua sponte.* However, because the defect in Plaintiff's denial-of-testing claim against Defendant Taylor appears to be formal instead of substantive, I recommend that the dismissal of that claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable such claim within 30 days of the Court's final decision on Defendants' motion.

**5. Mootness**

Plaintiff alleges that, on February 10, 2006 (after Plaintiff filed his Complaint on April 28, 2004), DOCS and Defendant Wright rescinded its policy of requiring that a prisoner participate in an ASAT/RSAT Program before receiving treatment for Hepatitis C. (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) [FN52]

> FN52. I note that, apparently, this decision was made as early as October 13, 2005. *See Hilton v. Wright,* 235 F.R.D. 40, 46 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) ("On October 13, 2005, Dr. Wright rescinded the ASAT/RSAT requirement from the [DOCS' Hepatitis C Primary Care Practice] Guideline.").

This factual allegation is significant because, as the relief requested in this action, Plaintiff seeks (1) "[i]mmediate comprehensive multi-vitamin treatment for those inmates that find themselves lacking the strength or ability to function normally due to their illness," (2) "[i]mmediate laboratory testing, and liver biopsies, etc ... to determine [the] stage of their illness, in accordance with Federal and National Institute of Health [requirements]," and (3) "[u]pon determination and diagnosis of the illness, immediate commencement of treatment without regard[ ] to any DOCS recommended program(s)." (Dkt. No. 1, ¶ 9.) In other words, Plaintiff does not seek any monetary relief. (*Id.*)

**\*13** However, given the Court's rather recent decision in Wilton v. Wright, 235 F.R.D. 40 (N.D.N.Y.2006) (Hurd, J.) (rejecting defendants' mootness argument under somewhat analogous circumstances), I am unable to conclude, without briefing by Defendants (and perhaps the occurrence of discovery), that Plaintiff's claims are mooted by DOCS' apparent decision to rescind the policy in question after Plaintiff filed suit. I note, however, that *Wilson* appears to be somewhat distinguishable from the instant case in that (1) the claims in *Wilson* were brought by a class of prisoners (including prisoners affected in the future), unlike the claims in this case, and (2) in any event, the plaintiffs in *Wilson* sought monetary relief in addition to injunctive relief, unlike Plaintiff in this case.

**ACCORDINGLY,** it is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
(Cite as: 2007 WL 2027912 (N.D.N.Y.))

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 27) be *DENIED;* and it is

**RECOMMENDED** that, pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure,

(1) Plaintiff's Ninth Amendment inadequate-medical-care claim and Fourteenth Amendment due process claim be *sua sponte DISMISSED* with prejudice,

(2) Plaintiff's Ninth Amendment right-to-privacy claim and his Fourteenth Amendment equal protection claim be *sua sponte DISMISSED* conditionally, i.e., if Plaintiff fails to file an Amended Complaint asserting a viable right-to-privacy claim and equal protection claim within 30 days of the Court's final decision on Defendants' motion, and

(3) Plaintiff's claims against Defendant Taylor be *sua sponte DISMISSED* with prejudice except his denial-of-testing claim, which should be *sua sponte DISMISSED* conditionally, i.e., on the same condition as mentioned above; and it is

**ORDERED** that the Clerk's Office shall serve a copy of this Report-Recommendation on Plaintiff at his address of record in this action (listed in the caption on the docket) and **also** at his apparent actual current address (listed on Dkt. No. 27, Part 4, Dkt. No. 28, and Dkt. No. 29, Part 2, as well as on the New York State DOCS Inmate Locator System), which is **Oneida Correctional Facility, 6100 School Road, Rome, N.Y. 13440.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v.*

*Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2007.
Muniz v. Goord
Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.